J.E. DUNN NORTHWEST, INC., APPELLANT, v.
CORUS CONSTRUCTION VENTURE, LLC, RESPONDENT.

No. 54332

March 3, 2011                                        249 P.3d 501

*Gibbs, Giden, Locher, Turner & Senet, LLP*, and *Ronald S. Sofen*, Las Vegas, for Appellant.

*Meier & Fine, LLC*, and *Glenn F. Meier* and *Kathryn J. Quinn*, Las Vegas, for Respondent.

Before the Court EN BANC.

## OPINION

By the Court, HARDESTY, J.:

Appellant J.E. Dunn Northwest, Inc. (Dunn), performed various preconstruction services for the One Las Vegas condominium project in Las Vegas, Nevada, and recorded a mechanic's lien for this work. Respondent Corus Construction Venture, LLC (Corus Bank),[1] provided construction financing for the project and recorded a deed of trust to secure its loan. In this appeal, we address four issues concerning the visibility requirement for a me-

---

[1]Corus Bank, N.A., was the original party on appeal. However, on October 16, 2009, Corus Construction Venture, LLC, became Corus Bank's successor in interest, so the parties stipulated to the substitution of Corus Construction Venture, LLC, as the respondent. Because Corus Bank was the actual entity with whom Dunn's dispute arose, we refer to respondent as Corus Bank.

chanic's lien to obtain priority over a deed of trust: (1) whether the visibility requirement contained in the definition of "commencement of construction" in NRS 108.22112 applies to both work performed and materials and equipment furnished to the construction site; (2) whether, in the 2003 amendments to NRS Chapter 108, the expansion of the definition of "work" to make preconstruction services lienable excuses the visibility requirement found in NRS 108.22112; (3) whether a lender with priority waives its superior position if it has actual knowledge of lienable preconstruction work; and (4) whether the placement of signs and removal of power lines constitutes visible work. We conclude that NRS 108.22112 plainly requires visibility of work performed, including preconstruction services, to establish priority. We also conclude that the 2003 amendments to NRS Chapter 108 did not affect the long-standing requirement that work must be visible on the property for a mechanic's lien to take priority over a deed of trust recorded before commencement of construction, and the statutory visibility requirement may not be waived by a lender who has actual knowledge of off-site preconstruction services. Finally, we conclude that the preparatory placement of signs and removal of power lines does not constitute visible work. In light of these conclusions, we affirm the district court's order granting Corus Bank's motion for summary judgment.

## FACTS

In August 2005, Midbar Condo Development hired Dunn to perform a project feasibility assessment for One Las Vegas, a multimillion-dollar condominium project consisting of two 20-story towers on Las Vegas Boulevard. Dunn reviewed design considerations, coordinated contract documents, developed a construction schedule, and completed various other administrative tasks in preparation for construction.

In December 2005, Midbar hired Dunn to serve as construction manager and contractor for the One Las Vegas project. From December 2005 to March 2006, Dunn performed over $1 million in preconstruction services that included preparing project schedules, coordinating meetings with subcontractors, reviewing subcontractors' and architects' drawings, and other planning-related services.

Midbar obtained a loan from Corus Bank to finance the construction of the project, and Corus Bank recorded its deed of trust on March 17, 2006. Before recording the deed of trust, Nevada Title Company hired a third party to perform an inspection of the property. The inspector reported that power lines had been removed from the subject property and provided photographs that depicted several signs on an adjacent property. The signs were im-

printed with the name of an architectural firm, Kobi Karp, which was performing design services for the One Las Vegas project in conjunction with Dunn. The signs were not located on the specific parcel inspected by the third party, and the inspector's report ultimately concluded that no construction activity had occurred on the property as of the date Corus Bank recorded its deed of trust.

During loan negotiations and before approving the release of any funds, Corus Bank performed a due diligence review, after which it approved Dunn as the contractor. Corus Bank negotiated a separate agreement with Dunn, which acknowledged that Dunn had provided, and would continue to provide, construction services. An early version of this agreement contained a subordination provision requiring Dunn to "waive its lien rights and to subordinate its mechanic['s] lien to the Corus Bank deed of trust." Dunn did not agree to this provision and Corus Bank ultimately removed it from the final version of the agreement.

Midbar issued a notice to proceed to Dunn on March 20, 2006, and Dunn commenced construction. Two years later, in April and June 2008, Clark County issued temporary certificates of occupancy for both condominium towers. In August 2008, Dunn served a notice of intent to lien and, on September 8, recorded a mechanic's lien for its unpaid services. A few weeks later, Midbar defaulted on the loan, and a dispute arose between Corus Bank and Dunn regarding the priority of the deed of trust and the mechanic's lien.

Dunn filed a complaint in district court in October 2008, seeking a declaratory judgment that its mechanic's lien had priority over Corus Bank's deed of trust. Dunn then filed a motion for summary judgment, and Corus Bank filed an opposition to Dunn's motion and a countermotion for summary judgment. The district court denied Dunn's motion, finding that pursuant to NRS 108.225 and NRS 108.22112, Dunn's work must have been visible from a reasonable inspection of the property prior to the date that Corus Bank recorded its deed of trust, and Dunn failed to make that showing.[2] The district court also denied Corus Bank's countermotion for summary judgment.

In March 2009, Corus Bank renewed its motion for summary judgment, arguing that under NRS 108.225, a mechanic's lien takes priority over encumbrances that attach after construction commences. Accordingly, Corus Bank contended that, because "no visible work had been performed on the property and no vis-

[2]NRS 108.225 and NRS 108.22112 do not require the specific lien claimant requesting priority to perform work prior to the recordation of the deed of trust in order for its mechanic's lien to have priority. Instead, all mechanics' liens relate back to the date overall construction commenced.

ible equipment or materials had been furnished to the property'' as of the date it recorded its deed of trust, construction had not commenced. Therefore, its deed of trust had priority. Dunn argued in opposition that a genuine issue of material fact existed with regard to whether its work was visible from a reasonable inspection of the property. Alternatively, Dunn claimed that Corus Bank waived the requirement that the work must be visible because, prior to recording its deed of trust, Corus Bank had knowledge that Dunn performed preconstruction services. Dunn also asked for more time for discovery to investigate Corus Bank's knowledge of Dunn's preconstruction work. ·

The district court granted Corus Bank's renewed motion for summary judgment. The court concluded that ''[t]here are no genuine factual issues indicating [that] Dunn provided any visible construction work on the property at the time Corus' deed of trust was recorded.'' The court further found that, under NRS 108.225, Dunn's waiver argument lacked merit because, even if Corus Bank was aware of Dunn's preconstruction services, ''such knowledge would not . . . preclude Corus from relying on the law relative to *priority*, requiring that a lien claimant, for priority purposes, show visible work of improvement at the time of recordation of an intervening deed of trust.'' Dunn appeals.

## DISCUSSION

A mechanic's lien has priority over a deed of trust recorded after the commencement of construction. The priority statute, NRS 108.225, states, in pertinent part:

> 1. The liens provided for in NRS 108.221 to 108.246, inclusive, are preferred to:
> (a) Any lien, mortgage or other encumbrance which may have attached to the property after the commencement of construction of a work of improvement.
> . . . .
> 2. Every mortgage or encumbrance imposed upon, or conveyance made of, property affected by the liens provided for in NRS 108.221 to 108.246, inclusive, after the commencement of construction of a work of improvement are subordinate and subject to the liens provided for in NRS 108.221 to 108.246, inclusive, regardless of the date of recording the notices of liens.

Since 1977, we have recognized that visible, on-site construction is required for mechanics' liens to take a priority position over a subsequently recorded deed of trust. *Aladdin Heating v. Trustees, Cent. States*, 93 Nev. 257, 260, 563 P.2d 82, 84 (1977). In this appeal, we examine the effect of the Legislature's 2003 amendments

to NRS Chapter 108 on the visibility requirement for preconstruction services to take priority over a deed of trust. Dunn proffers three arguments that the visibility requirement does not apply to its preconstruction services. First, Dunn contends that NRS 108.22112, which defines "commencement of construction," is ambiguous because that statute makes it unclear whether work performed, and specifically preconstruction services, must be visible. Second, Dunn argues that NRS 108.22184, which defines "work" for Chapter 108 purposes, expanded the scope of lienable work to include preconstruction services, excusing the visibility requirement for preconstruction services because such application would create a "right without a remedy." Finally, Dunn argues that work did not have to be visible in this case because Corus Bank had actual knowledge of Dunn's preconstruction services, resulting in a waiver of the visibility requirement. Dunn alternatively argues that the placement of signs and removal of power lines on the site constitutes visible work. We conclude that these arguments are without merit.

*Standard of review*

"'This court reviews a district court's grant of summary judgment de novo.'" *George L. Brown Ins. v. Star Ins. Co.*, 126 Nev. 316, 322, 237 P.3d 92, 96 (2010) (quoting *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005)). "Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of any material fact." *Dictor v. Creative Management Services*, 126 Nev. 41, 44, 223 P.3d 332, 334 (2010). We review the facts in the light most favorable to the nonmoving party. *George L. Brown Ins.*, 126 Nev. at 322, 237 P.3d at 96.

*The term "commencement of construction" plainly requires visibility for both work performed and materials or equipment furnished for a work of improvement*

NRS 108.225, the lien priority statute, provides that priority attaches after "commencement of construction." NRS 108.22112 defines "commencement of construction" as the date on which:

1.  Work performed; or
2.  Materials or equipment furnished in connection with a work of improvement,
↪is visible from a reasonable inspection of the site.

Dunn maintains that the visibility requirement is ambiguous because the arrow symbol indicating a flush line and the comma at the end of subsection 2 make it unclear whether work performed

must be visible for a mechanic's lien to take priority over a deed of trust. We disagree.

When the language of a statute is clear on its face, "this court will not go beyond [the] statute's plain language." *Great Basin Water Network v. State Eng'r*, 126 Nev. 187, 196, 234 P.3d 912, 918 (2010). However, if a statute is ambiguous, we examine legislative history and interpret the statute " "in light of the policy and the spirit of the law, and the interpretation should avoid absurd results.' " *Westpark Owners' Ass'n v. Dist. Ct.*, 123 Nev. 349, 357, 167 P.3d 421, 427 (2007) (quoting *Hunt v. Warden*, 111 Nev. 1284, 1285, 903 P.2d 826, 827 (1995)). "Statutory language is ambiguous if it is capable of more than one reasonable interpretation." *In re Candelaria*, 126 Nev. 408, 411, 245 P.3d 518, 520 (2010).

NRS 0.025(2), which explains that the arrow symbol, like the one in NRS 108.22112, is simply a symbol to indicate a flush line, states:

> Except as otherwise required by the context, text of a statute that:
> (a) Follows subsections, paragraphs, subparagraphs or sub-subparagraphs that are introduced by a colon;
> (b) Is not designated as a separate subsection, paragraph, subparagraph or sub-subparagraph; and
> (c) Begins flush to the left margin rather than immediately following the material at the end of the final subsection, paragraph, subparagraph or sub-subparagraph,
> ↪applies to the section as a whole, in the case of subsections, or to the subdivision preceding the colon as a whole rather than solely to the subdivision that the text follows. The symbol "↪" in bills and in Nevada Revised Statutes indicates the beginning of such text.

Dunn maintains that this drafting convention does not apply to NRS 108.22112 because the proposed version of the bill that added NRS 108.22112 did not contain the arrow, and the context of the statute requires an exception. However, the discrepancy between the proposed and final versions is explained by the fact that the arrow symbol was first adopted by the Legislature during the same session in which NRS 108.22112 was enacted. *See* 2003 Nev. Stat., ch. 367, § 20, at 2094. Regarding the context of the statute, Dunn argues that if we apply the phrase that appears after the arrow symbol to both subsections 1 and 2, the result will be that lienable, preconstruction work under NRS 108.22184 will

not have a priority position because it is not visible. However, determining whether work is entitled to a lien is not the same as determining the priority of any such lien. As discussed below, visibility alone determines priority. Therefore, NRS 108.22112 is not an exception to the normal application of the provisions included after the arrow symbol, and the visibility requirement applies to both work performed, including preconstruction services, and materials and equipment furnished to the site.[3]

Dunn also asks us to utilize the "last antecedent rule" of statutory construction to conclude that the language after the arrow symbol applies only to subsection 2 of NRS 108.22112. The last antecedent rule, also known as the doctrine of the last antecedent, dictates that "qualifying words and phrases, . . . where no contrary intention appears, refer solely to the last antecedent." *Thompsen v. Hancock*, 49 Nev. 336, 341, 245 P. 941, 942 (1926). Using this rule, Dunn argues that the phrase "is visible from a reasonable inspection of the site" that appears after the comma at the end of subsection 2 and after the arrow symbol applies only to the immediately preceding subsection 2 regarding materials furnished. However, "the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one." *In re Sehome Park Care Center, Inc.*, 903 P.2d 443, 447 (Wash. 1995). Therefore, even if we apply the last antecedent rule as Dunn suggests, its argument would fail because NRS 108.22112's qualifying phrase "is visible from a reasonable inspection of the site" would still apply to both subsections 1 and 2.

Additionally, adopting Dunn's proposed statutory construction of NRS 108.22112 and applying the qualifying phrase after the arrow symbol only to subsection 2 would also lead to an absurd reading of the statute. This court seeks to avoid interpretations that yield " 'unreasonable or absurd result[s].' " *Great Basin*, 126 Nev. at 196, 234 P.3d at 918 (quoting *Allstate Insurance Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009)). If we were to interpret the phrase appearing after the arrow symbol as not applying to subsection 1, that provision would read: " 'Commencement of construction' means the date on which [w]ork performed." This statutory construction is grammatically incorrect and there is no support for reading the statute in this manner. *See Heydenfeldt*

---

[3]Even without the arrow, the visibility provision would still apply to the section as a whole because the provision in NRS 0.025(2) regarding the effect of flush lines has been in effect since 1991. *See* 1991 Nev. Stat., ch. 309, § 1, at 809. In 2003, the Legislature simply added the arrow symbol to clearly indicate such lines. 2003 Nev. Stat., ch. 367, § 20, at 2094.

*v. Daney G. & S. M. Co.*, 10 Nev. 290, 313 (1875) ("[W]e are not to construe statutes by equity, but to collect the sense of the legislature by a sound interpretation of its language, according to reason and grammatical correctness."). Thus, Dunn appears to be resorting to " 'ingenuity to create ambiguity' " that does not exist, *see Secretary of State v. Burk*, 124 Nev. 579, 592, 188 P.3d 1112, 1121 (2008) (quoting *Rothschild v. United States*, 179 U.S. 463, 465 (1900)), and we conclude that the meaning of NRS 108.22112 is plain and requires visibility for work performed, including pre-construction services, in order for a mechanic's lien to take a priority position over a deed of trust.

*The legislative expansion of NRS 108.22184, which defines lienable "work," did not affect the priority of liens*

Dunn further argues that the visibility requirement in NRS 108.22112 does not apply to preconstruction services because that statute is incompatible with NRS 108.22184, which defines the type of work entitled to a lien.[4] Specifically, it argues that we must harmonize NRS 108.22112 with 108.22184 and conclude that the visibility requirement in NRS 108.22112 does not apply to pre-construction services. Dunn's rationale is that because preconstruction services have lien rights, those services must also be entitled to a priority position regardless of the express visibility requirement in NRS 108.22112. However, under the current statutory scheme, whether work is entitled to a lien pursuant to NRS 108.22184 and whether it is entitled to priority over other encumbrances pursuant to NRS 108.225 are two entirely separate issues. Dunn asks us to ignore the visibility requirement as applied to pre-construction services. We decline to do so.

We first addressed lien priority among third-party claimants in *Aladdin Heating v. Trustees, Central States*, 93 Nev. at 260, 563 P.2d at 84. There, we held that "actual on-site" construction was required for a lien to have priority over a deed of trust.[5] *Id.* The

---

[4]NRS 108.22184 defines "work" as "the planning, design, geotechnical and environmental investigations, surveying, labor and services provided by a lien claimant for the construction, alteration or repair of any improvement, property or work of improvement whether the work is completed or partially completed."

[5]The statute at issue in *Aladdin*, former NRS 108.225, stated in pertinent part:

    1. The liens provided for in NRS 108.221 to 108.2395, inclusive, are preferred to:
      (a) Any lien, mortgage or other encumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done, or materials were commenced to be furnished.

*Aladdin*, 93 Nev. at 260 n.1, 563 P.2d at 84 n.1; *see also* 1965 Nev. Stat., ch. 434, § 7, at 1160.

Legislature codified this visibility requirement in 1993 by clarifying in NRS 108.225 that '' 'work done' does not include any work commenced before on-site construction has started.'' 1993 Nev. Stat., ch. 502, § 4, at 2056.

In 2003, the Legislature again revisited NRS Chapter 108 and added NRS 108.22112, which defines ''commencement of construction.'' 2003 Nev. Stat., ch. 427, § 4, at 2587. This definition simply moved the visibility requirement previously set forth in *Aladdin* and the 1993 version of NRS 108.225 to a new section, NRS 108.22112. The Legislature also added NRS 108.22184, which defines ''work'' and sets forth the services for which a lien may be claimed. 2003 Nev. Stat., ch. 427, § 23, at 2589-90. The list of such services now includes planning, design, and other related services.[6]

At no point during the development of Nevada's current lien priority statutes did the Legislature dispense with the visibility requirement. Thus, visibility is the linchpin of priority, and nothing in the legislative history suggests that the Legislature intended to change that requirement for any services, including preconstruction work.

Other jurisdictions have reached similar conclusions and have required the distinction between lienable work and priority among lien claimants. In *Ketchum, Konkel, et al. v. Heritage Mountain*, the court noted that ''[t]he distinction between the rights of mechanics against the owner of the property where no priority issue exists and the adjustment of relative priorities of third parties in the property is crucial.'' 784 P.2d 1217, 1221 (Utah Ct. App. 1989). Also, in *Williams & Works, Inc. v. Springfield Corp.*, the Supreme Court of Michigan considered an argument similar to Dunn's regarding whether, in expanding the scope of lienable work, the legislature also intended that such work was entitled to priority. 293 N.W.2d 304, 310 (Mich. 1980). The court concluded that ''it [is] unreasonable to believe the [Michigan] Legislature intended to indirectly change . . . the traditional and well-established rule requiring a visible, on-site commencement of construction in order to establish priority, by the simple expansion of the lienable services outlined in [the statute].'' *Id.* at 311.

Public policy also supports maintaining the visibility requirement independently of the statutory scope of lienable work. For example, in *Aladdin* we noted that if we were to ''permit mechanics' liens to . . . relate back to a time long before'' any construction on the property was visible, ''no prudent businessman would be willing to lend construction money.'' *Aladdin*, 93 Nev. at 260, 563

---

[6]Corus Bank does not dispute that Dunn performed lienable work.

P.2d at 84. This is because the purpose of the visibility requirement is "to inform prospective lenders inspecting the premises that liens had attached." *Id.* Maintaining the visibility requirement, absent contrary legislative intent, preserves this certainty in construction financing. Thus, we conclude that the visibility requirement of NRS 108.22112 applies to preconstruction services, regardless of the 2003 amendments to NRS 108.22184.

*The visibility requirement is not waivable*

Dunn also argues that a party waives NRS 108.22112's visibility requirement if it has actual knowledge of lienable preconstruction services. Dunn claims that Corus Bank knew of Dunn's lienable work, thus it waived its priority claim. Whether the visibility requirement is waivable is an issue of first impression in Nevada. Based on the plain language of Nevada's priority statutes and the policy reasons for them, we conclude that this requirement is not waivable.

Dunn relies on *Kirkwold Construction v. M.G.A. Construction*, 513 N.W.2d 241 (Minn. 1994), for the proposition that a party with actual knowledge of lienable preconstruction work waives the visibility requirement. However, that case involved Minnesota's lien priority statute, Minn. Stat. § 514.05(1), which gives a bona fide purchaser or mortgagee priority over mechanics' liens only if they did not have "actual notice" of prior lienable work. Therefore, *Kirkwold* interpreted a statute specifically addressing notice. Conversely, Nevada's mechanic's lien statutes do not mention notice or provide for priority based on notice. *See In re L. Bruce Nybo, Inc.*, 247 B.R. 294, 300 (Bankr. D. Nev. 2000). If the Legislature intended for notice to affect priority, it could have drafted the statute to reflect such intent. *See id.* Without such a provision, NRS 108.225 expressly requires commencement of construction alone for priority and "actual, constructive or recorded notice" cannot be substituted for notice through commencement of construction. *Id.*

This conclusion is congruent with the recognized policy interest in maintaining certainty and predictability in construction financing. In *Aladdin*, we noted that lenders would be less likely to assume the risk of a construction loan if priority relates back to the date of nonvisible, preconstruction work. 93 Nev. at 260, 563 P.2d at 84; *see also Tracy Price Associates v. Hebard*, 72 Cal. Rptr. 600, 606 (Ct. App. 1968) ("To hold that such knowledge constitutes waiver or estoppel would expose lenders to so many unpredictable hazards that construction financing would become extremely difficult."). Thus, it is irrelevant whether Corus Bank

knew of Dunn's preconstruction work, or whether Dunn agreed to subordinate its mechanic's lien because Corus Bank's knowledge did not affect its priority position.[7]

### Dunn's work was not visible

Dunn alternatively argues that the work it performed was visible because an architect's sign had been placed at the project site, albeit on an adjacent property, and power lines were removed. These facts, Dunn contends, placed Corus Bank on notice that it should have inquired further as to potential lienable work performed on the site. We disagree.

In *Aladdin*, we noted that commencement of construction requires "actual on-site construction" and does not include merely

---

[7]Dunn also argues that the district court erred when it refused to allow Dunn additional time to conduct discovery before granting Corus Bank's motion for summary judgment. Specifically, Dunn sought further discovery in order to demonstrate:

> (1) the nature of Corus Bank's understanding of the preconstruction services performed by J.E. Dunn; (2) the nature of the review performed by Corus Bank on the construction documents; (3) the reason for which Corus Bank demanded that J.E. Dunn subordinate its lien to the construction loan; (4) the reasons for which Corus Bank removed the subordination clause from the Consent and Agreement; (5) the nature of any review performed by Corus Bank . . . under Nevada law on the issue of lien priority; (6) the nature of the due diligence performed by Corus Bank on the construction documents . . . ; (7) the reasons for which Corus Bank failed to request a lien release from J.E. Dunn for the preconstruction services which J.E. Dunn had performed; and, (8) the nature of any representations made by Corus Bank to J.E. Dunn regarding payment.

The district court declined to provide Dunn with more time to conduct discovery, determining that the issues identified by Dunn "do not pertain to the question of whether there was actually visible evidence of construction work on the property but, instead, address what understanding Corus would reasonably be expected to have had as to preconstruction services and documents." According to the district court, whether such services performed by Dunn constituted lienable work "does not involve the issue of priority as between Dunn and Corus."

Pursuant to NRCP 56(f), the district court may "grant a continuance when a party opposing a motion for summary judgment is unable to marshal facts in support of its opposition." *Aviation Ventures v. Joan Morris, Inc.*, 121 Nev. 113, 117-18, 110 P.3d 59, 62 (2005). The party must "express[ ] how further discovery will lead to the creation of a genuine issue of material fact." *Id.* at 118, 110 P.3d at 62. We review a district court's refusal to grant additional time for an abuse of discretion. *Id.* Here, the district court did not abuse its discretion because, even if Corus Bank had knowledge of Dunn's preconstruction work, there would be no genuine issue of material fact as to whether Dunn's mechanic's lien had priority over the deed of trust because visibility is the threshold inquiry.

"architectural, soil testing, and survey work." 93 Nev. at 260, 563 P.2d at 84. These activities may involve some physical presence on the site, including stakes, monuments, and the like, but this presence is insufficient to provide lenders notice of lienable work entitled to priority. *See In re L. Bruce Nybo, Inc.*, 247 B.R. at 298 (work related to preconstruction activities, such as staking parcel boundaries, does not satisfy the visibility requirement). Other courts have more generally held, and we agree, that preparatory work on a site, such as clearing or grading, does not constitute commencement of construction. *See, e.g., Clark v. General Electric Co.*, 420 S.W.2d 830, 833-34 (Ark. 1967). Thus, we conclude that installing business signs and removing power lines do not constitute "actual on-site construction" because such activities are preparatory and are not part of the visible construction project itself. Therefore, Dunn's work was not visible, so its mechanic's lien is junior to Corus Bank's deed of trust.

## CONCLUSION

NRS 108.225 expressly provides that "commencement of construction" is required for lien priority. Because we conclude that "commencement of construction" plainly requires visibility of on-site work in order for a mechanic's lien to take a priority position over a deed of trust and that Dunn's preconstruction services were not visible, its mechanic's lien is junior to Corus Bank's deed of trust. We further conclude that the visibility requirement is not waivable, and, therefore, it is irrelevant whether Corus Bank knew of Dunn's preconstruction work or whether Dunn agreed to subordinate its mechanic's lien because Corus Bank's knowledge did not affect its priority position. Therefore, summary judgment in favor of Corus Bank was appropriate because no genuine issue of material fact existed as to whether construction had commenced prior to the recordation of Corus Bank's deed of trust.

Accordingly, we affirm the district court's summary judgment.

DOUGLAS, C.J., and CHERRY, SAITTA, GIBBONS, PICKERING, and PARRAGUIRRE, JJ., concur.