2011 Ark. 281

**MAY CONSTRUCTION COMPANY, INC., Appellant**

v.

**TOWN CREEK CONSTRUCTION & DEVELOPMENT, LLC; Chambers Bank Of North Arkansas; and Ohio Casualty Insurance Company, Appellees.**

No. 09–1238.

Supreme Court of Arkansas.

June 23, 2011.

---

Davidson Law Firm, Ltd., by: Charles Darwin Davidson, Little Rock, for appellant.

Charles L. Stutte, Fayetteville, for appellee Town Creek Construction & Development, LLC.

Friday, Eldredge & Clark, LLP, by: R. Christopher Lawson and Jason N. Bramlett, Fayetteville, for appellee Chambers Bank of North Arkansas.

Quattlebaum, Grooms, Tull & Burrow PLLC, by: Brandon B. Cate, Springdale, for appellee Ohio Casualty Insurance Company.

COURTNEY HUDSON HENRY, Justice.

May Construction Company ("May") appeals from a Washington County Circuit Court order declaring a lien on real property, owned by Town Creek Construction & Development, LLC ("Town Creek"), subordinate to a mortgage filed by Chambers Bank of North Arkansas ("Chambers") and unenforceable against a lien bond issued by Ohio Casualty Insurance Company ("Ohio Casualty"). For reversal, May argues that the circuit court erred in interpreting the materialmen's lien statute, ruling that construction commenced after the execution of Chambers's mortgage, and finding that May could not recover against the lien bond. Town Creek cross-appeals, arguing that the circuit court

erred in ruling that May was entitled to a lien in the amount of $353,904.53. Because this appeal presents issues of first impression and statutory interpretation, we have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(b). We reverse and remand the direct appeal, and we affirm the cross-appeal.

## I. *Facts*

Town Creek owned the Aspen Ridge property ("the property"), a twenty-nine-acre project consisting of mixed residential and commercial development in Fayetteville. On June 2, 2005, Town Creek hired May as a general contractor and entered into a written cost-plus contract with May to construct improvements on the property not to exceed $3,900,000. The contract contained an arbitration clause. To finance the project, Town Creek obtained a loan from Chambers that was secured by a mortgage of Phases I and II of the residential portions of the property and a certificate of deposit valued at $150,000. However, Town Creek did not mortgage Phase III, the commercial portion of the property. The loan totaled $6,385,918.05 ("$6.385 million").

The facts are in dispute as to when May began construction on the property. After a preconstruction meeting on June 16, 2005, Mike Gilbert, May's senior vice-president, and Hal Forsyth, president of Town Creek, exchanged various emails concerning the date that construction would begin. In an email dated June 30, 2005, Gilbert wrote to Forsyth, stating, "Hal we are permitted and inspected and plan to be ready to go on Tuesday. We will NOT commence without your authorization." On that same day, Forsyth wrote, "Mike, we are okay to mobilize equipment [on Phase III, which was not the subject of the lien] on the site. The only thing for sure we can't do is to turn any dirt." Forsyth also sent an email to Justin Salter at Chambers, which stated, "I was just checking in to see if you had finalized our loan for Aspen Ridge, so I could have May Construction get things started."

On July 13, 2005, Town Creek executed the mortgage encumbering the property, and on July 20, 2005, the mortgage was recorded in Washington County. Over the next year, May worked on the project primarily through its subcontractor, Vernaci Construction Company ("Vernaci Construction"). During the course of the project, disputes arose between the parties involving unanticipated delays, change orders, and unpaid subcontractors. As a result, in August 2006, Town Creek terminated its contract with May. Subsequently, on September 26, 2006, May recorded a materialmen's lien against Town Creek's property.

Vernaci Construction filed suit in Washington County Circuit Court against May, Town Creek, Chambers, and several other contractors and suppliers, which led to a number of cross-claims, counterclaims, and third-party claims. Among them, May sought money due from Town Creek under the construction contract. Town Creek defaulted on its loan to Chambers, leading Chambers to seek foreclosure on the property.

May's contract claim against Town Creek went to arbitration, and the circuit court stayed the remainder of the lawsuit pending the outcome of the arbitration. On September 4, 2007, the arbitrator awarded May $393,995.56 plus $35,000 in attorney's fees for a total amount of $428,995.56 but did not address the issue of entitlement and priority of the liens. May returned to circuit court, seeking confirmation of the arbitration award, foreclosure on its lien, and a declaration that its lien was superior to all others. Town Creek later deeded the property to Cham-

bers in lieu of foreclosure and secured a lien bond to release the property from the encumbrance of May's lien. Ohio Casualty, as surety, issued a materialmen's lien bond in the penal sum of $800,000, naming Town Creek as principal and May as obligee.

In late May 2008, the circuit court conducted a three-day bench trial and later issued a letter opinion, dated January 16, 2009. On July 1, 2009, the circuit court entered a final order, granting judgment in favor of May in the amount of $428,995.56, which reflected the arbitration award. Specifically, the circuit court made the following rulings: (1) construction did not commence until after the filing of Chambers's mortgage; (2) Chambers's mortgage on the property had first priority while May's lien had second priority; (3) May's affidavit of account and cost-detail report were sufficient and credible evidence to substantiate its lien amount as determined by the court; (4) May had a valid lien claim in the amount of $353,904.53, and May's lien attached to tracts one and two of Phase I of the Aspen Ridge property; (5) with the filing of the lien bond, the property was freed from the encumbrance of May's lien; and (6) May could not recover against the lien bond because the value of May's lien upon foreclosure would call for speculation. May timely filed a notice of appeal and an amended notice of appeal. Town Creek cross-appealed. Subsequently, this case was certified to our court, and we now consider May's appeal.

## II. *Commencement of Construction and Priority of the Lien*

For the first point on appeal, May challenges the circuit court's ruling that its lien was inferior to Chambers's mortgage on the property. Specifically, May argues that its lien relates back to the date that the construction commenced, pursuant to Arkansas Code Annotated section 18–44–110(a)(1) (Repl.2003). May asserts that construction commenced when Vernaci mobilized workers and equipment on site as early as June 16, 2005.

Town Creek, Chambers, and Ohio Casualty argue that the circuit court properly ruled that May did not commence construction until after the execution of Chambers's construction mortgage and that Chambers's mortgage had priority over May's lien. Appellees contend that the priority between a mortgage lien and a materialmen's lien is determined by Arkansas Code Annotated section 18–44–110.

The applicable statute pertaining to the priority of a materialmen's lien is set forth in Arkansas Code Annotated section 18–44–110. We construe lien statutes strictly, as they are in derogation to the common law. *BB & B Constr. Co. v. F.D.I.C.*, 316 Ark. 663, 875 S.W.2d 48 (1994). Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Wilson v. Phillips Cnty. Election Comm'n*, 2011 Ark. 223, 2011 WL 1896779. When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.*

Arkansas Code Annotated section 18–44–110,[1] the lien statute, provides in pertinent part as follows:

1. The current version of section 18–44–110 codifies a portion of Act 1298 of 1995.

(a)(1) The liens for labor performed or material or fixtures furnished, as provided for in this subchapter, shall have equal priority toward each other without regard to the date of filing the account or lien or the date when the particular labor or material was performed or furnished. *All such liens shall date from the time that the construction or repair first commenced.*

(2) *Construction or repair commences when there is a visible manifestation of activity on real estate that would lead a reasonable person to believe that construction or repair of an improvement to the real estate has begun or will soon begin, including, but not limited to, the following:*

(A) Delivery of a significant amount of lumber, bricks, pipe, tile, or other building material to the site;

(B) Grading or excavating the site;

(C) Laying out lines or grade stakes; or

(D) Demolition in an existing structure.

. . . .

(b)(1)(A) The liens for labor performed or materials or fixtures furnished, as provided for in this subchapter, shall attach to the improvement on which the labor was performed or the materials or fixtures were furnished in preference to any encumbrance existing on the real estate prior to the commencement of construction or repair of the improvement.

(B) In all cases in which the prior encumbrance was given for the purpose of funding construction or repair of the improvement, that lien shall have priority over all liens given by this subchapter.

(2) The liens, as provided for in this subchapter, shall be enforced by foreclosure, as further provided for in this subchapter, and the property ordered sold subject to the lien of the prior encumbrance on the real estate.

(c) The lien for labor performed and materials or fixtures furnished, as provided for in this subchapter, shall have priority over all other encumbrances that attach to the real estate or improvements thereon subsequent to commencement of construction or repair.

(Emphasis added.) The materialmen's lien provided in this statute does not take precedence over a previously recorded construction mortgage. *Dempsey v. McGowan*, 291 Ark. 147, 722 S.W.2d 848 (1987).

The parties cite the following cases: *Mark's Sheet Metal, Inc. v. Republic Mtg. Co.*, 242 Ark. 475, 414 S.W.2d 106 (1967) (holding under the previous statute that commencement means some visible or manifest action on the premises to be improved, making it apparent that the building is going up or other improvements are to be made); *Clark v. Gen. Elec. Co.*, 243 Ark. 399, 420 S.W.2d 830 (1967) (holding that the work performed, which included grading, was not a visible or manifest action on the premises but was considered preparatory work); *Worthen Bank & Trust Co. v. Walker*, 270 Ark. 868, 606 S.W.2d 382 (Ark.App.1980) (holding that a contractor's work of removing a fence, clearing brush, and filling a small lake constituted commencement of improvements upon the property at issue); *Nat'l Lumber Co. v. Advance Dev. Corp.*, 293 Ark. 1, 732 S.W.2d 840 (1987) (holding that digging a sewer line, pouring footings, and staking and flagging lots did not commence construction but constituted site preparation).[2] However, we note that

---

**2.** Prior to the 1995 amendment, courts were     required to determine whether there was any

these cases were decided prior to the present statute's codification, and we turn our focus to the application of the current statute.

In the present case, the circuit court ruled that May's construction had not commenced prior to the filing of Chambers's construction mortgage on July 20, 2005. From the bench, the court summarized the basis for its ruling as follows:

[R]egarding when construction began, pursuant to Town Creek's Exhibit No. 3, there was an email sent between Hal Forsyth and Mike Gilbert, the senior vice-president of May Construction, dated Thursday, June 30th. At that time, Mr. Gilbert wrote, "Hal, we are permitted and inspected and plan to be ready to go on Tuesday. We will NOT ..."—capitalized—"... commence without your authorization." In fact, Stipulated Exhibit No. 1, the contract between the parties, states when construction will begin, and that is pursuant to Article 4, "Date of Commencement and Substantial Completion. The date of the commencement of the work shall be the date of this agreement, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the owner." It goes on to read, "The commencement date shall be identified in a notice to proceed issued by the owner." Now that—that was the contract language. We're back to the emails on June 30th, and Mr. Forsyth wrote back to Mr. Gilbert saying, "Mike, we are okay to mobilize equipment on the site. The only thing for sure we can't ..."—CAN apostrophe T—"... can't do is to turn any dirt." Now, I realize I read that. I included the emphasis on that because the email

simply says, "The only thing for sure we can't do is to turn any dirt. We can go through the other items when you call." Mr. Gilbert signed a Consent to Assignment of Construction Contract dated—to Chambers Bank of North Arkansas, pursuant to Town Creek Exhibit No. 5. And the commencement date was also pursuant to a meeting agenda, pursuant to Town Creek's Exhibit No. 6. Hal Forsyth testified that there were—there was work done on the project prior to the contract that Town Creek entered into with May Construction. Homes were on the property. They were removed. There were clearings. Junk was picked up for three years, he stated. And the—Mr. Gilbert's testimony was, and I quote, because I wrote this down word for word regarding the commencement date, "... was not supposed to commence work until Hal told him to." He said, "Hal needed to do his banking." He also said that "there were issues over schedule and completion times, so commencement date is important," Mike Gilbert said. He also said he "knew it was on hold until the bank could file its mortgage." Now that was his testimony.

*It is clear to this court that the intent of the parties was—I mean, throughout this, from the signing of the original contract until after this mortgage was recorded on July 20th, that these parties intended for the banking, using Mr. Gilbert's words, to be done and completed.* And there were emails back and forth between the owner and May Construction. *And that construction was not to begin—did not intend for the construction to begin until after that mortgage was recorded. Now, it was the intent,*

---

"visible or manifest action on the premises, making it apparent that a building or improvement was being commenced or under-

way." *Clark,* 243 Ark. at 405, 420 S.W.2d at 834.

*clearly, of these parties that there would be no construction until after the mortgage was recorded, and I'm going to honor that. And find that the construction began after the recording of the mortgage.* Now there may have been— it was signed on July 13th and filed on July 20th. There was a seven-day waiting period, but Mr. Forsyth was in contact with Mr. Gilbert during that time frame and, obviously, Mr. Gilbert testified that he knew that he wasn't supposed to turn any dirt. He knew that the—the significance of filing—of the recordation of the construction mortgage, and so the court is going to find—otherwise, in any construction project, any general contractor could go out and bulldoze trees without telling the owner and claim a priority on the lien. So in any event, the court finds that—makes that finding.

(Emphasis added.) The court memorialized this ruling in its final order and judgment, dated July 1, 2009, stating, "Construction did not commence until after the filing of Chambers's mortgage. Accordingly, Chambers's lien is of first priority, and May's lien is of second ⌊9priority."

Here, the circuit court's ruling— that construction had not commenced prior to the recording of Chambers's lien—was clearly based upon the intent of the parties. However, under the plain language of section 18–44–110, the subjective intent of the parties is not an element of the commencement of construction. In our review of the statute, the circuit court should have examined the "visible manifestation of activity" on the property, including, but not limited to, any of the four enumerated circumstances, to determine whether construction had "commenced" at the time that Chambers filed its construction mortgage. Ark.Code Ann. § 18–44–110(a)(2). In other words, "com-

mence[ment]" of construction is the date upon which a "visible manifestation of activity" has occurred "that would lead a reasonable person to believe that construction ... has begun or will soon begin...." *Id.* That "visible manifestation of activity" includes an objective determination of construction activity on the property at any given time. Because the circuit court did not make these determinations, we hold that the circuit court erred in ruling that construction did not commence until after the filing of Chambers's mortgage. Accordingly, we reverse the direct appeal and remand for the circuit court to make appropriate findings consistent with this opinion.

### III.  *Cross–Appeal*

For its cross-appeal, Town Creek argues that the circuit court erred in finding that May perfected a lien in the amount of $353,904.53 or that May was entitled to a lien for any amount. Specifically, Town Creek claims that May's lien is not for labor and materials ⌊10provided to the property and asserts that the circuit court committed error in allowing May to rely upon speculative evidence to support its lien claim. In response, May argues that the lien amount awarded by the circuit court was not clearly erroneous. May contends that "everything is lienable" for a general contractor on a cost-plus contract except pure profits and, because profits are not included in its lien, the $40,091.03 costs, as well as any lien profits, are lienable.

We have stated that findings of fact determined at a bench trial are entitled to substantial deference on appeal and should not be upset unless they are clearly erroneous. *Seidenstricker Farms v. Doss,* 372 Ark. 72, 270 S.W.3d 842 (2008). Here, May supplied an affidavit of account that showed Town Creek owed May an out-

standing balance of $393,995.56. However, the circuit court took issue with certain charges totaling $40,091.03, which represented overhead, hotel charges, flight charges for nonemployees, and temporary toilets. From the bench, the circuit court ruled that it could not discern whether these costs included labor and materials used in the project. Therefore, because the court could not categorize these costs with any certainty, it simply subtracted that disputed amount of $40,091.03 from the outstanding balance of $393,995.56 to arrive at an amount of $353,904.53. Based upon these calculations, we cannot say that the circuit court erred. We decline to address May's lien-profit argument because it was not raised below.

Reversed and remanded on direct appeal; affirmed on cross-appeal.