130 Nev., Advance Opinion 62

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| BYRD UNDERGROUND, LLC; AND WELLS CARGO, INC., Appellants, vs. ANGAUR, LLC; BALAJI PROPERTIES INVESTMENT, LLC; AND US BANK NATIONAL ASSOCIATION, Respondents. | No. 61978 |

**FILED**

AUG 0 7 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Certified questions, pursuant to NRAP 5, concerning the priority of mechanics' liens based on visible commencement of construction. United States Bankruptcy Court for the District of Nevada; Bruce T. Beesley, Judge.

*Questions answered in part.*

Foley & Oakes, PC, and Daniel T. Foley, Las Vegas; M. Nelson Segel, Las Vegas; Peel Brimley LLP and Eric B. Zimbelman and Richard L. Peel, Henderson,
for Appellants.

Fennemore Craig Jones Vargas and Craig S. Dunlap and Christopher H. Byrd, Las Vegas; Meier & Fine, LLC, and Glenn F. Meier, Las Vegas,
for Respondents.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, C.J.:

In Nevada, a mechanic's lien takes priority over other encumbrances on a property that are recorded after construction of a work

14-25862

of improvement visibly commences. The visible-commencement-of-construction requirement often gives rise to dispute, however, and the United States Bankruptcy Court for the District of Nevada has certified three questions of law to this court regarding this aspect of mechanic's lien priority law.[1]

The first question queries whether the placement of dirt material on a future project site before building permits are issued and the

---

[1]The three certified questions were presented as follows:

> 1. Can a mechanic's lien claimant properly claim lien priority under NRS 108.225 when the dirt/material that is the basis of the lien on the project was placed on a prospective building project site months before the building permit was issued or the general contractor hired? Stated another way, does placing significant quantities of dirt/material on a prospective building project site months before a building permit is issued constitute "commencement of construction" on such a site pursuant to NRS [108.22112]?

> 2. Did the Nevada Supreme Court in *J.E. Dunn Northwest, Inc. v. Corus Construction Venture, LLC*, 249 P.3d 501, 509, 127 Nev. Adv. Op. 5 (Nev. 2011) mistakenly use the term of art "clearing and grading" instead of "clearing and grubbing" when describing preparatory work on a construction project?

> 3. Does "grading" in the circumstances presented here constitute visible "commencement of construction" under NRS 108.22112 for purposes of establishing lien priority under NRS 108.225?

general contractor is hired can constitute commencement of construction. The second question asks us to clarify our decision in *J.E. Dunn Northwest, Inc. v. Corus Construction Venture, L.L.C.*, 127 Nev. ___, 249 P.3d 501 (2011), in which we stated that "clearing or grading" does not constitute commencement of construction. 127 Nev. at ___, 249 P.3d at 509. In our view, answering this question requires us to evaluate the appropriate precedential weight that courts should give to the passage in question, and we therefore rephrase the second certified question to include whether this statement was dictum. *See, e.g., Boorman v. Nev. Mem'l Cremation Soc'y*, 126 Nev. ___, ___, 236 P.3d 4, 6 (2010) (rephrasing certified questions under NRAP 5). We rephrase the second question as follows:

> Was the passage in *J.E. Dunn Northwest, Inc. v. Corus Construction Venture, L.L.C.*, 127 Nev. ___, ___, 249 P.3d 501, 509 (2011), that states "preparatory work on a site, such as clearing or grading, does not constitute commencement of construction," dictum? If so, can grading work constitute visible commencement of construction under NRS 108.22112?

Finally, the third question inquires whether the grading that took place in this case constituted visible commencement of construction, such that the mechanics' liens at issue take priority.

Because the second question influences our analysis of the other questions, we address it first. We respond to the three questions as follows. Regarding the bankruptcy court's second question, we conclude that this court's use of the term "clearing or grading" was dictum, and thus, our holding in *J.E. Dunn* does not preclude a trier of fact from finding that grading property for a work of improvement constitutes visible commencement of construction. Regarding the first question, we

conclude that contract dates and permit issuance dates are irrelevant to the visible-commencement-of-construction test, but may assist the trier of fact in determining the scope of the work of improvement. Finally, we decline to answer the third question because it would require this court to resolve the factual dispute as to whether the grading presented here constituted visible commencement of construction of the work of improvement.

## FACTS AND PROCEDURAL HISTORY

### The construction project

The debtor respondents Angaur, LLC, and Balaji Properties Investment, LLC (collectively, the owners), jointly purchased a parcel of unimproved real property in Las Vegas, Nevada. No relevant activity took place with respect to the subject property until the spring and summer of 2006, when two different third parties placed, and allegedly spread, between 200 and 300 truckloads of dirt/material on the property.[2] Both of the third parties were performing work on unrelated construction projects on neighboring parcels and roadways. The degree to which the subject property was covered and subsequently spread or graded is unclear given the record before this court.

Meanwhile, the owners solicited bids from general contractors to construct a strip mall on the property. During bidding on the project,

---

[2]The parties could not agree what to call the substance that was placed on the property, so the bankruptcy court used the term "dirt/material." The bankruptcy court noted that it did not intend the term to carry any specific legal meaning. We also will use the term "dirt/material" to remain consistent with the bankruptcy court.

appellant Byrd Underground, LLC, submitted a bid to general contractor Joseph's Construction to perform subcontracted grading work, but Atlas Construction Ltd., not Joseph's Construction, was selected as the general contractor. On November 2, 2006, at the request of Atlas, a representative of Byrd dug four to six holes on the subject property with a backhoe. Byrd dug these holes to determine how much dirt/material had been brought onto the subject property since its prior bid in order to submit a revised bid to Atlas incorporating the new scope of work. On November 8, 2006, Atlas and the owners executed the written contract for Atlas to serve as the general contractor on the construction project.

On November 28, 2006, a title company conducted a site inspection of the subject property and concluded that the land was vacant and that there was no evidence of a recent work of improvement. Thereafter, the owners borrowed funds from PFF Bank & Trust for the purpose of constructing the strip mall on the subject property,[3] and on November 29, 2006, a deed of trust for the construction loan was recorded with the Clark County Recorder. Byrd had not performed any work on the subject property prior to November 29, 2006, other than digging the test holes and submitting bids to Joseph's Construction and Atlas.

Subsequently, a dust control permit and a building permit were issued for the subject property. During construction, Atlas used and incorporated at least a portion of the dirt/materials into the construction project. Atlas and Byrd executed three written subcontracts—for wet

---

[3]PFF Bank eventually went into FDIC receivership and respondent US Bank now claims ownership of the construction loan and deed of trust.

utilities, dry utilities, and grading—in 2007. Byrd and another subcontractor, appellant Wells Cargo, Inc. (collectively, lien claimants), provided services for the construction project but were not paid. As a result, they commenced mechanic's lien actions in state court and obtained judgments against Angaur, Balaji, and Atlas.

*Angaur and Balaji file bankruptcy petitions and the lien claimants' objections lead the bankruptcy court to certify questions to this court*

After the construction project was completed, the owners filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Both of the owners' schedules of creditors holding secured claims included (1) a "[f]irst [m]ortgage" to US Bank, and (2) both lien claimants' judgment liens. The owners and US Bank entered into a forbearance agreement and created a disclosure statement and plan of reorganization with the bankruptcy court that stated that US Bank was the only "Class 1" secured creditor.

The lien claimants filed an objection to the owners' disclosure statement and plan of reorganization, and they subsequently filed an adversary complaint in bankruptcy court to determine the priority of liens. At the close of discovery, the owners, US Bank, and the lien claimants filed competing motions for summary judgment.

During briefing on the competing motions for summary judgment, the lien claimants requested that the bankruptcy court certify questions to this court in order to clarify whether this court in *J.E. Dunn* mistakenly used the term "clearing [or] grading" instead of "clearing and grubbing" when describing non-"construction" preparatory work on a construction project. The lien claimants argued that "clearing and grubbing" is a recognized term of art used in the construction industry, whereas "clearing and grading" is not. Additionally, the lien claimants

Supreme Court
OF
Nevada

(O) 1947A

6

argued that evidence of the dirt/materials being spread or graded on the subject property creates genuine issues of material fact regarding when the construction visibly commenced sufficient to avoid summary judgment. In response, the bankruptcy court certified questions to this court.

## DISCUSSION

### *Priority of mechanics' liens in Nevada*

A mechanic's lien is a "statutory creature established to help ensure payment for work or materials provided for construction or improvements on land." *In re Fontainebleau Las Vegas Holdings (Fontainebleau II)*, 128 Nev. ___, ___, 289 P.3d 1199, 1210 (2012); *see also* Hearing on S.B. 343 Before the Assembly Judiciary Comm., 73d Leg. (Nev., May 13, 2005) (indicating that mechanics' liens "assist people who have improved real property so that they can get paid for their efforts"). Here, the parties do not dispute that the lien claimants performed lienable work. But "whether work is entitled to a lien pursuant to NRS 108.22184 and whether it is entitled to priority over other encumbrances pursuant to NRS 108.225 are two entirely separate issues." *J.E. Dunn*, 127 Nev. at ___, 249 P.3d at 507.

Relevant to the priority issue, Nevada's mechanic's lien priority statute, NRS 108.225, provides that mechanics' liens are entitled to priority over any encumbrance that attaches after construction of a work of improvement began:

> 1. The liens provided for in NRS 108.221 to 108.246, inclusive, are preferred to:
>
> (a) Any lien, mortgage or other encumbrance which may have attached to the property after the commencement of construction of a work of improvement.
>
> . . . .

> 2. Every mortgage or encumbrance imposed upon, or conveyance made of, property affected by the liens provided for in NRS 108.221 to 108.246, inclusive, after the commencement of construction of a work of improvement are subordinate and subject to the liens provided for in NRS 108.221 to 108.246, inclusive, regardless of the date of recording the notices of liens.

Thus, if construction has commenced on a "work of improvement" before a deed of trust is recorded, then a mechanic's lien will take a priority position over the deed of trust regardless of when the notice of lien is recorded. NRS 108.225; *see J.E. Dunn*, 127 Nev. at ___, 249 P.3d at 509; *Fontainebleau II*, 128 Nev. at ___, 289 P.3d at 1211. Moreover, to claim priority, a claimant itself need not perform before the deed of trust is recorded, so long as the work of improvement began before the deed's recordation, because "all mechanics' liens relate back to the date overall construction is commenced." *J.E. Dunn*, 127 Nev. at ___ n.2, 249 P.3d at 504 n.2. As a result, in this case, the lien claimants are entitled to priority positions over the deed of trust if the work of improvement's construction commenced, as those terms are defined by statute, on the subject property before the deed of trust was recorded on November 29, 2006.

*Visibility of the work of improvement alone determines priority*

> NRS 108.22112 defines "[c]ommencement of construction" as the date on which:
>
> > 1. Work performed; or
> >
> > 2. Materials or equipment furnished in connection with a work of improvement,
>
> is visible from a reasonable inspection of the site.

This court analyzed NRS 108.22112 in *J.E. Dunn* and concluded that, consistent with "the recognized policy interest in maintaining certainty

and predictability in construction financing," which would be hindered if lenders were forced to assume the risk associated with funding a construction project over which nonvisible work could grant contractors priority, "visibility alone determines priority." 127 Nev. at ___, ___, 249 P.3d at 508, 506. We then reviewed the preconstruction activities that Dunn—the lien claimant—had performed, in light of NRS 108.22112's visibility standard. In doing so, we stated, "[o]ther courts have more generally held, and we agree, that preparatory work on a site, such as clearing or grading, does not constitute commencement of construction." *Id.* at ___, 249 P.3d at 509 (citing *Clark v. Gen. Elec. Co.*, 420 S.W.2d 830, 833-34 (Ark. 1967), *superseded by statute as stated in May Constr. Co. v. Town Creek Constr. & Dev., L.L.C.*, 383 S.W.3d 389, 392-95 (Ark. 2011)). Because placing an architect's sign at the project site and removing power lines was "insufficient to provide lenders notice of lienable work entitled to priority," we held that those preconstruction activities failed to constitute visible commencement of "'actual on-site construction.'" *Id.* at ___, 249 P.3d at 509 (quoting *Aladdin Heating Corp. v. Trs. of Cent. States*, 93 Nev. 257, 260, 563 P.3d 82, 84 (1977)).

Regarding the second question, the lien claimants take issue with our statement in *J.E. Dunn* that listed "clearing or grading" as types of nonvisible preparatory work that fail to establish construction commencement, and they argue that the statutes require merely that construction be visible to a reasonable site inspection to establish lien priority. *J.E. Dunn*, 127 Nev. at ___, 249 P.3d at 504-05 (citing *Aladdin Heating*, 93 Nev. at 260, 563 P.2d at 84). The lien claimants argue that it is unnecessary to declare broad categories of construction activities per se "nonvisible," thereby depriving the trier of fact of the opportunity to

Supreme Court
OF
Nevaoa

(0) 1947A

9

evaluate the visibility of such activities on a case-by-case basis. As concerns clearing and grading, we agree.

As noted, mechanics' liens have priority over other encumbrances that attach to the property after "the [visible] commencement of construction of a work of improvement." NRS 108.225(1)(a). NRS 108.22188 defines "[w]ork of improvement" as the "entire structure or scheme of improvement as a whole, including, without limitation, all work, materials and equipment to be used in or for the construction, alteration or repair of the property or any improvement thereon." Nothing in these provisions excludes preconstruction activities from the definition of work of improvement, and indeed, subsection 2 of NRS 108.22188 expressly recognizes that activities undertaken to prepare the project site can be a work of improvement. NRS 108.22188(2) (stating that "the improvement of the site" may be "contemplated by the contracts to be a separate work of improvement to be completed before the commencement of construction of the buildings"). Moreover, NRS 108.22128 defines "[i]mprovement," in pertinent part, as including buildings, irrigation systems and landscaping, removal of trees or other vegetation, the drilling of test holes, and grading, grubbing, filling, or excavating. In construing these provisions together, as we must, *City of N. Las Vegas v. Warburton*, 127 Nev. ___, ___, 262 P.3d 715, 718 (2011), we conclude that the trier of fact must look to the entire structure or scheme of improvement as a whole—the "overall construction"—rather than solely evaluating the activities based on whether they are preparatory or structural or vertical construction, in determining whether construction on a work of improvement has commenced. *J.E. Dunn*, 127 Nev. at ___ n.2, 249 P.3d at 504 n.2.

Accordingly, grading work can be an integral part of the "entire structure or scheme of improvement as a whole" and part of the actual on-site construction. NRS 108.22188. If it is, grading may be sufficient to establish commencement of construction in Nevada as long as it is visible from a reasonable inspection of the site sufficient to provide lenders notice that lienable work has commenced, and we are unwilling to conclude, as a matter of law, that on-site grading work can never place lenders on notice that lienable work has begun. NRS 108.22112; *see also May Constr. Co.*, 383 S.W.3d at 392-94 (construing Arkansas's mechanic's lien statute "just as it reads, giving the words their ordinary and usually accepted meaning in common language" in determining that grading can constitute commencement of construction).

This holding is consistent with *J.E. Dunn*, in which we explained that the visibility requirement for determining lien priority applies to preconstruction activities. 127 Nev. at ___, ___, 249 P.3d at 507-08. To the extent that the examples of nonconstruction preparatory work in *J.E. Dunn* suggest otherwise, neither clearing nor grading were at issue in that case, and thus the examples are mere dicta. *See St. James Vill., Inc. v. Cunningham*, 125 Nev. 211, 216, 210 P.3d 190, 193 (2009). We take this opportunity to clarify that *J.E. Dunn* does not preclude a trier of fact from finding that clearing and grading work constitutes visible commencement of construction of a work of improvement. We thus answer the second question, as we have rephrased it, in the affirmative: our statement in *J.E. Dunn*, 127 Nev. at ___, 249 P.3d at 509, regarding "clearing or grading" was dictum, and grading work may constitute visible commencement of construction under NRS 108.22112.

*Contract dates and permit issuance dates are irrelevant to the visible-commencement-of-construction test set forth by NRS 108.22112*

The bankruptcy court's first certified question asks whether a mechanic's lien claimant can properly claim lien priority under NRS 108.225 based on work that was performed or materials that were delivered months before the building permit was issued and the general contractor was hired. The lien claimants argue that the plain language of NRS 108.225 and NRS 108.22112 require visibility, and that nothing in the statutes conditions the priority of a lien on the issuance of permitting or contract dates. The lien claimants argue that the timing of contracts and permits related to a given project is irrelevant to the issue of whether the delivery of materials or the performance of work had, in fact, been furnished prior to the date the deed of trust was recorded. We agree.

Here, "the meaning of NRS 108.22112 is plain and requires visibility for work performed, including preconstruction services, in order for a mechanic's lien to take a priority position over a deed of trust." *J.E. Dunn*, 127 Nev. at ___, 249 P.3d at 506-07; *see also Aladdin Heating*, 93 Nev. at 260, 563 P.2d at 84. Thus, any subjective intent on the part of an owner to commence construction on a given date, based on either a contract or permit issuance date, is not an element of the commencement of construction and should therefore not be considered dispositive. *See May Constr.*, 383 S.W.3d at 395 (concluding that the district court erred when it failed to make factual determinations regarding objective, visible manifestation of activity on the property, and instead ruled that construction did not commence until after the mortgage was recorded based on the perceived intent of the lender).

But while the date of the contract or permits does not directly affect priority, the contract and permits may have some bearing on the

SUPREME COURT
OF
NEVADA

(O) 1947A

12

issue, because the fact-finder must define the work of improvement before it can determine when that work of improvement visibly commenced. In this regard, contracts and permits may assist in determining the scope of the work of improvement's "structure or scheme . . . as a whole." NRS 108.22188. If the contract expressly or impliedly excludes certain work, then that work might not be a part of the "work of improvement." *See Schultz v. King*, 68 Nev. 207, 212-13, 228 P.2d 401, 404 (1951) (looking to the contract in addressing the possible scope of a work of improvement); *see also I. Cox Constr. Co. v. CH2 Invs., L.L.C.*, 129 Nev. ___, ___, 296 P.3d 1202, 1205 (2013) (determining a work of improvement's scope by looking to the purpose, impetus, and continuity of the work, the parties' contemplations regarding the project, the building and operating permits, and the timing of the work in relation to the rest of the construction).

Thus, we answer the first question in the affirmative, with a caveat: a mechanic's lien claimant may properly claim lien priority under NRS 108.225 when the work or material forming the basis of the lien's priority was placed or performed on the site "months before the building permit was issued or the general contractor hired," as long as there was, in fact, visible commencement of construction as defined by NRS 108.22112 and as long as all of the work or material placed or performed on the site in the prior months was a part of the same work of improvement under NRS 108.22188 as the later work giving rise to the mechanic's lien.

*We decline to answer the third certified question because it asks this court to make findings of fact that should be left to the bankruptcy court*

The third certified question asks: "[d]oes 'grading' in the circumstances presented here constitute visible 'commencement of construction' under NRS 108.22112 for purposes of establishing lien

priority under NRS 108.225?" But the visibility, scope, and duration of a work of improvement generally are factual questions for the trier of fact to decide, *I. Cox Construction*, 129 Nev. at ___, 296 P.3d at 1205, and this court recently noted that it cannot make findings of fact in responding to a certified question. *In re Fontainebleau Las Vegas Holdings (Fontainebleau I)*, 127 Nev. ___, ___, 267 P.3d 786, 795 (2011). "The answering court's role is limited to answering the questions of law posed to it, and the certifying court retains the duty to determine the facts and to apply the law provided by the answering court to those facts." *Id.* at ___, 267 P.3d at 794-95. "This approach prevents the answering court from intruding into the certifying court's sphere by making factual findings or resolving factual disputes." *Id.* at ___, 267 P.3d at 795.

The dispute between the parties as to whether the importing and spreading or grading of the dirt/material in this case constituted visible "commencement of construction" of one comprehensive "work of improvement" is, as explained above, of an intensively factual nature. Given these unresolved factual disputes, we decline to answer the third question.

## CONCLUSION

We conclude that this court's use of the term "clearing or grading" in *J.E. Dunn Northwest, Inc. v. Corus Construction Venture, L.L.C.*, 127 Nev. ___, ___, 249 P.3d 501, 509 (2011), was dictum and does not alter our ultimate holding that visibility alone determines priority. We therefore clarify that grading work may constitute visible commencement of construction of a work of improvement in some circumstances, as long as it is visible from a reasonable inspection of the site in a manner sufficient to provide notice of lienable work that may be entitled to priority. Additionally, we conclude that contract dates and

Supreme Court
OF
Nevada

(O) 1947A

14

permit issuance dates are irrelevant to the visible-commencement-of-construction test set forth by NRS 108.22112, but may assist the trier of fact in determining the scope of the work of improvement. Finally, we decline to decide whether the circumstances presented here constitute visible commencement of construction under NRS 108.22112 of a comprehensive work of improvement under NRS 108.22188 because it would require this court to resolve the factual dispute between the parties.

_____, C.J.
Gibbons

We concur:

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

Supreme Court
OF
Nevaoa

(O) 1947A