INGERSOLL-RAND COMPANY; DR Holding Corporation; and Glen Whitworth *v.* EL DORADO CHEMICAL COMPANY

07-606                                                    283 S.W.3d 191

Supreme Court of Arkansas

Opinion delivered April 17, 2008

[Rehearing denied May 15, 2008.]

---

*Friday, Eldredge & Clark, LLP*, by: *Donald H. Bacon* and *Robert S. Shafer*, for appellants.

*Chisenhall, Nestrud & Julian*, P.A., by: *Charles R. Nestrud, Jim L. Julian*, and *Heather G. Moody*, for appellee.

ROBERT L. BROWN, Justice. The appellants, Ingersoll-Rand Company, DR Holding Corporation, and Glen Whitworth, appeal from a judgment entered in favor of the appellee, El Dorado Chemical Company (EDCC), in the amount of $9,796,218.37. The sole issue on appeal is whether the circuit court erred in refusing to enforce a limitation-of-liability clause allegedly contained in the contract between the parties. We affirm.

EDCC is a chemical manufacturing company that produces and supplies ammonium nitrate fertilizers, industrial grade explosives, and industrial acids at its manufacturing facility in El Dorado. Within the manufacturing facility, EDCC operates four nitric acid production plants, one of which is the plant at issue, the DMW plant.

In 2004, EDCC initiated maintenance plans for the DMW plant, and as part of those plans, an Ingersoll-Rand E-516 Expander was scheduled to be repaired and rebuilt. An expander is a piece of equipment used in nitric acid production. As part of the production process, gas is forced through the expander, which causes blades within the expander to rotate. The expander, in turn, generates horsepower to operate other equipment within the plant. EDCC solicited proposals from various vendors for the repair and rebuilding of the E-516 Expander. On June 25, 2004, Dresser-Rand Company, a partnership, submitted a proposal in which it promised to complete fifteen specific repair items and to supply three new parts[1] for the price of $119,845. Appellants Ingersoll-Rand Company and DR Holding Company are the general partners of Dresser-Rand Company.

On July 12, 2004, EDCC accepted Dresser-Rand's proposal and issued a purchase order for Dresser-Rand to rebuild the E-516 Expander for the proposed price. Dresser-Rand accepted EDCC's purchase order and faxed EDCC a letter explaining that EDCC must agree to Dresser-Rand's "Terms of Sale and Conditions for Parts And Equipment" by signing and returning the letter to Dresser-Rand before the repair and rebuilding would begin. The letter specifically read:

> Dresser-Rand Company will not start any work on your order unless and until either: (1) you first agree by signing and returning this letter within ten (10) days that this transaction will be governed exclusively by the Dresser-Rand Company's Terms of Sale and Conditions for Parts And Equipment as printed on the back of this letter; or (2) we negotiate and both sign an Agreement containing mutually acceptable terms and conditions. Any terms and conditions submitted by Buyer's inquiry or purchase order, or any other document shall have no effect.

---

[1] In its proposal, Dresser-Rand promised to supply new scroll pins, new stator housing pins, and all sealants.

Nothing, however, was printed on the back of the letter. EDCC signed and returned the letter. EDCC never received a document entitled "Terms of Sale and Conditions for Parts And Equipment."[2] EDCC did receive a faxed document from Dresser-Rand entitled "Terms and Conditions of Sale – Field Services and Repairs" at the same time as the letter, but EDCC never signed or returned that document to Dresser-Rand.

As requested by EDCC, Dresser-Rand removed the E-516 Expander from the DMW plant, transported the expander to Dresser-Rand's facility in Oklahoma for the repair and rebuilding, and returned and reinstalled the repaired expander to the DMW plant. On October 8, 2004, the E-516 Expander failed and ultimately fell apart during operation. The expander was destroyed, and in the process, an oil line attached to the expander leaked oil onto hot equipment. A fire began, and the DMW plant was destroyed. After the E-516 Expander failed, EDCC removed a second expander, the E-520 Expander, which Dresser-Rand had rebuilt earlier in 2004, from storage where it had been stored for use as a spare. EDCC sent the E-520 Expander to a second maintenance company, Sulzer Hickham, Inc., for inspection. Sulzer Hickham discovered that the work performed on the E-520 Expander was deficient as well.

On August 7, 2006, EDCC filed a Second Amended Complaint against Ingersoll-Rand Company and DR Holding Corporation, the general partners of Dresser-Rand, and against Glen Whitworth, Dresser-Rand's shop superintendent in Tulsa, Oklahoma, and John Does 1 - 10, unknown employees of Dresser-Rand (collectively referred to as Ingersoll-Rand). The complaint alleged that Ingersoll-Rand was negligent in the repairing and rebuilding of the E-516 Expander as well as the E-520 Expander and that Ingersoll-Rand's negligence caused EDCC to suffer a loss of property due to the fire at the DMW plant. The complaint further alleged that EDCC lost production of nitric acid during the time that the fire damage to the DMW plant was being repaired, which resulted in lost profits, and also that EDCC suffered damages by having to pay for the E-520 Expander to be rebuilt a second time. EDCC asserted in its complaint that Ingersoll-Rand was liable under theories of negligence and strict liability, and it sought damages of over $10,000,000.

---

[2] A document with this title was not introduced into evidence at trial.

Ingersoll-Rand answered the complaint by raising an affirmative defense that a limitation-of-liability clause set out in the "Terms and Conditions of Sale – Field Services and Repairs" faxed to EDCC at the same time as the June 13, 2004 letter limited its liability to the amount of the contract price. Ingersoll-Rand then filed a Motion for Partial Summary Judgment, in which it argued that before Dresser-Rand began the repair and rebuilding of the E-516 Expander, EDCC had accepted Dresser-Rand's terms and conditions, which contained the limitation-of-liability clause limiting Ingersoll-Rand's liability to the amount of the contract price, $119,845. Ingersoll-Rand sought a partial summary judgment denying all of EDCC's damage claims exceeding $119,845. The circuit court held a hearing on the partial-summary-judgment motion, following which it entered an order denying the motion. In its order, the circuit court refused to find as a matter of law that the contract between the parties limited Ingersoll-Rand's liability and ruled that there were issues of fact regarding the contract that should be decided by a jury. Specifically, the circuit court said: "The Court does not find as a matter of law that the contract between the parties limits the liability of the defendants. There exist genuine issues of material fact to be decided by a jury."[3]

On October 4, 2006, EDCC moved to prohibit introduction of evidence at trial regarding the limitation-of-liability clause. Ingersoll-Rand also filed a motion in limine to exclude evidence of any damages over the contract price. On October 9, 2006, before the trial began, the circuit court ruled that any evidence of the limitation-of-liability clause in the alleged contract could not be presented to the jury. The circuit court also denied Ingersoll-Rand's motion in limine. The circuit court did allow Ingersoll-Rand to introduce the document entitled "Terms and Conditions of Sale – Field Services and Repairs" into evidence with the limitation-of-liability clause redacted. At trial, Ingersoll-Rand also moved for a directed verdict at the close of the plaintiff's case and at the close of all evidence to limit damages to the contract amount of $119,845. Both motions were denied.

On October 12, 2006, the jury returned a verdict in favor of EDCC in the amount of $9,796,218.37. EDCC filed a Motion for Prejudgment and Postjudgment Interest. The circuit court denied

---

[3] One of the EDCC arguments made to the trial court and referred to in its order was that the terms and conditions were not on the back of the letter received.

EDCC's motion for prejudgment interest and entered a judgment on November 13, 2006, conforming to the jury's verdict and adding postjudgment interest. A corrected judgment was entered on November 14, 2006, which stated that the claims against Ingersoll-Rand, DR Holding Corporation, and Glen Whitworth had been fully tried and that all other parties were dismissed. Ingersoll-Rand moved to modify the amount of the judgment from $9,796,218.37 to $119,845, which was denied by the circuit court. Ingersoll-Rand filed a notice of appeal, and EDCC filed a notice of cross-appeal.[4]

Ingersoll-Rand now claims as its sole point on appeal that the circuit court erred by refusing to enforce the limitation-of-liability clause contained in the asserted contract between the parties. Ingersoll-Rand initially contends that the clause is an enforceable exculpatory provision and that it is not contrary to public policy. Ingersoll-Rand acknowledges that exculpatory clauses are usually strictly construed against the parties relying on them but insists that strict construction is inapplicable in this case because both EDCC and Dresser-Rand are sophisticated and experienced business enterprises and that the contract in question was an arms-length transaction fairly entered into by both parties. Ingersoll-Rand advances the notion that EDCC was not forced into accepting Dresser-Rand's terms and conditions but rather was invited to negotiate with Dresser-Rand, if EDCC chose not to agree with those terms and conditions. Hence, Ingersoll-Rand maintains that the elements required for the enforcement of an exculpatory clause are satisfied in this case. Moreover, Ingersoll-Rand urges that since EDCC knew of the liability that was being limited, EDCC stood to benefit from Dresser-Rand's work on the E-516 Expander because of the reduced cost. In short, it argues that the contract was freely and fairly entered into by the parties.

We begin by acknowledging that the limitation-of-liability clause is clearly an exculpatory provision. An exculpatory provision "is one where a party seeks to absolve himself in advance of the consequences of his own negligence." *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 148, 207 S.W.3d 525, 530 (2005). Exculpatory provisions are not favored by the law due to

---

[4] EDCC's notice of cross-appeal specified that EDCC was appealing from the circuit court's order and judgment denying prejudgment interest. EDCC's motion to withdraw the cross-appeal was granted on October 2, 2007.

the strong public policy of encouraging the exercise of care. *See id.* However, exculpatory provisions are not invalid *per se. See id.* This court has explained:

> Because of the disfavor with which exculpatory contracts are viewed, two rules of construction apply to them. First, they are to be strictly construed against the party relying on them. Second, we have said that it is not impossible to avoid liability for negligence through contract, but that, to avoid such liability, the contract must at least clearly set out what negligent liability is to be avoided. Further, we have held that when we are reviewing such a contract, we are not restricted to the literal language of the contract, and we will also consider the facts and circumstances surrounding the execution of the release in order to determine the intent of the parties.

*Id.* at 149, 207 S.W.3d at 530 (internal citations omitted).

In addition, this court has recognized three requirements for the enforcement of an exculpatory provision:

> [A]n exculpatory clause may be enforced: (1) when the party is knowledgeable of the potential liability that is released; (2) when the party is benefitting from the activity which may lead to the potential liability that is released; and (3) when the contract that contains the clause was fairly entered into.

*Finagin v. Ark. Dev. Fin. Auth.*, 355 Ark. 440, 458, 139 S.W.3d 797, 808 (2003).

Bearing our jurisprudence relating to the disfavor in which exculpatory clauses are held in mind, we turn to the issue of whether the limitation-of-liability clause, which was contained in the document entitled "Terms and Conditions of Sale – Field Services and Repairs," was part of the contract between EDCC and Dresser-Rand. The facts surrounding this issue are undisputed. As already related, on July 13, 2004, Dresser-Rand faxed EDCC a letter explaining that before work on the E-516 Expander could begin, EDCC was required to sign and return the letter indicating acceptance of the "Terms of Sale and Conditions for Parts And Equipment" as printed on the back of the letter. Those terms and conditions, however, were not printed on the back of the letter, but instead a document entitled "Terms and Conditions of Sale – Field Services and Repairs" was faxed as a separate document with the letter. EDCC signed the letter and returned it

to Dresser-Rand, but did not sign and return the document entitled "Terms and Conditions of Sale – Field Services and Repairs." Thus, the issue before this court is whether the asserted letter agreement by Ingersoll-Rand properly included the provisions contained in the "Terms and Conditions of Sale – Field Services and Repairs."

When a contract refers to another writing and makes the terms of that writing a part of the contract, the two documents become a single agreement between the parties and must be construed together. *See F & M Bldg. P'ship v. Farmers & Merchs. Bank*, 316 Ark. 60, 871 S.W.2d 338 (1994); *see also* 11 Richard A. Lord, *Williston on Contracts* § 30:25 (4th ed. 1999). In order to incorporate a separate document by reference into a contract, "the reference must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the contracting parties." 17A C.J.S. *Contracts* § 316 (1999). The document to be incorporated "must be described in such terms that its identity may be ascertained beyond reasonable doubt." *Id*; *see also* Lord, *supra*. Furthermore, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." Lord, *supra*, at 234.

■ There are virtually no cases in Arkansas discussing what is required for a document to be properly incorporated into a contract by reference. Other states, however, have addressed the issue, and a majority of states have concluded that the contract must clearly and specifically reference the document to be incorporated. *See, e.g., Prichard v. Clay*, 780 P.2d 359, 361 (Alaska 1989) (with regard to an incorporated document, "[p]arties do not undertake obligations contained in a separate document unless their contract clearly says so."); *Kleveland v. Chicago Title Ins. Co.*, 46 Cal. Rptr. 3d 314, 316 (Cal. Ct. App. 2006) ("Incorporation by reference requires that (1) the reference to another document was clear and unequivocal; (2) the reference was called to the attention of the other party, who consented to that term; and (3) the terms of the incorporated documents were known or easily available to the contracting parties."); *Estate of Kokjohn v. Harrington*, 531 N.W.2d 99 (Iowa 1995) (per curiam) (recognizing that the "common thread" throughout cases from other jurisdictions regarding incorporation by reference was the requirement that the reference be clear and specific; Iowa Supreme Court adopted such a requirement for the first time); *W. Wash. Corp. of Seventh-Day Adventists v.*

*Ferrellgas, Inc.*, 7 P.3d 861 (Wash. Ct. App. 2000) (incorporation by reference must be clear and unequivocal, and it must be clear that parties to agreement had knowledge of and consented to incorporated terms) (quoting Lord, *supra*).

In the case at hand, the document entitled "Terms and Conditions of Sale – Field Services and Repairs," which contained the limitation-of-liability clause, was not properly incorporated into the parties' contract based on the authority cited above. It may have been Dresser-Rand's intent to incorporate the above-titled document into the July 13, 2004 letter, but it failed to do so with the requisite clarity and specificity. The letter specifically requested that EDCC agree to the "Terms of Sale and Conditions for Parts And Equipment" as printed on the back of the letter, but nothing was printed on the back of the letter, and the terms and conditions that EDCC received were not titled the same way as the letter described. Accordingly, the inclusion of the terms and conditions containing the limitation-of-liability clause was not clear and unequivocal, and the identity of the terms and conditions was not ascertainable beyond a reasonable doubt due to the letter's misstatement of the document's title. Coupled with the disfavor with which this court views exculpatory provisions, we conclude that the limitation-of-liability clause was not incorporated by reference into the contract between EDCC and Dresser-Rand. Because the limitation-of-liability clause was not clearly and specifically made part of the parties' contract, the circuit court did not err by refusing to enforce it as a matter of law.[5]

■ Ingersoll-Rand relies heavily in its brief on appeal and in oral argument on the testimony during its cross-examination of David McDonald, maintenance manager at the DMW plant. McDonald testified that a document called "terms and conditions" came by fax together with a letter from Dresser-Rand. He responded in the affirmative that part of the letter that he signed said that he had to sign the letter and "acknowledge" the terms and

---

[5] Ingersoll-Rand argues in its brief to this court that regardless of how the terms and conditions were titled, the letter specifically identified the terms and conditions attached to the letter as "Per Dresser-Rand Form DR120 attached," and that the form number DR120 was printed on the lower right corner of the terms and conditions faxed along with the letter. However, it appears that this argument was not raised to the circuit court, and, thus, this court will not address it. *See Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). In any event, this slight reference to the terms and conditions is not enough to incorporate the document in light of the misstated title in the body of the letter.

conditions before Dresser-Rand would begin work on the E-516 Expander. Ingersoll-Rand urges that this testimony conclusively decides the incorporation-by-reference issue and constitutes an admission by a representative of EDCC that liability was limited. Ingersoll-Rand reads too much into this one question and answer. We dispute that "acknowledgement" of receipt of the terms and conditions meant that EDCC agreed to be bound by all the terms and conditions in the separate document. At the very least, "acknowledgment" is an ambiguous term in this context. More needed to be done to establish limitation of liability as part of the contract as a matter of law.

■ This leads to a second point that bears mention. EDCC sued Ingersoll-Rand in tort for the damage to its plant, and Ingersoll-Rand raised the terms and conditions with the clause limiting liability as an affirmative defense. As a result, when the circuit court refused to enforce the clause as part of the parties' contract as a matter of law and referred to genuine issues of material fact to be decided by the jury, it was Ingersoll-Rand's responsibility to present the issue of whether the provisions of the "Terms and Conditions of Sale – Field Services and Repairs" were part of the parties' contract to the jury. This could have been done by special interrogatory. Had the jury determined that these terms and conditions were part of the contract, the circuit court would have had a firm basis upon which to reduce the jury's award to the contract amount of $119,845. This, however, was not done by Ingersoll-Rand, even though issues of fact relating to contract formation are clearly questions for the jury. *See Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996); *see also* Lord, *supra*, § 30:3.

The same holds true with respect to Ingersoll-Rand's questioning of the damage award by the jury. A special verdict form could have been submitted to the jury breaking down the elements of the damages awarded. This too was not done.

We hold that the circuit court did not err in refusing to limit Ingersoll-Rand's liability as a matter of law. Because we hold as we do, it is unnecessary to address EDCC's alternative grounds for affirmance regarding breach of warranty and partner liability.

Affirmed.

IMBER, J., not participating.