2012 Ark. App. 20

**GRAYSON & GRAYSON, P.A., Appellant**

v.

**David A. COUCH, Appellee.**

**No. CA 11–189.**

Court of Appeals of Arkansas.

Jan. 4, 2012.

Charles R. Hicks, Little Rock, for appellant.

Brian Gene Brooks, Greenbrier, for appellee.

DOUG MARTIN, Judge.

This dispute is between a law firm, appellant Grayson & Grayson, P.A., whose principals are Melanie Grayson and Keith Grayson, and an attorney, appellee David Couch. The circuit court granted summary judgment against both parties. Grayson & Grayson brought this appeal, and Couch filed a cross-appeal. We reverse the summary judgment entered against Grayson & Grayson on its claims

against Couch and remand for trial. We affirm the summary judgment entered against Couch on his claims against Grayson & Grayson.

## I. *Procedural History*

According to Grayson & Grayson, the law firm invited Couch to enter into an "of counsel" relationship with it in early fall 2003, after Couch's former partner had ended their association. The precise terms of the parties' oral agreement are disputed; however, it is not disputed that Couch moved into Grayson & Grayson's law office and was given access to its staff, equipment, and supplies, in exchange for his splitting fees with Grayson & Grayson on some nursing-home cases. On October 8, 2003, Couch formed David A. Couch, PLLC. The parties worked together on some cases and separately on others. A number of clients signed engagement contracts with Grayson & Grayson and Couch; Couch opened probate proceedings for some of them, signing some of the pleadings "Grayson & Grayson, P.A., by David A. Couch." He signed some settlement agreements in the nursing-home cases as "David A. Couch, Grayson & Grayson," and used Grayson & Grayson's letterhead. Some fees were paid to the client and Couch. In December 2005, Couch and Keith Grayson met to "square up" some matters; precisely what was discussed is in dispute. In January 2006, however, Grayson & Grayson terminated its relationship with Couch, who moved out of Grayson & Grayson's office space at the end of that month.

On August 24, 2006, Grayson & Grayson filed this action against Couch, individually, and his PLLC, alleging breach of contract and unjust enrichment for their failure to properly split fees collected in settling five lawsuits. Couch's PLLC filed a counterclaim against Grayson & Grayson for one-half of the fee paid to Grayson & Grayson in settling a lawsuit brought by Leister Dewey against Beverly Enterprises. Grayson & Grayson responded that it was holding that fee in trust as a set-off against the amount Couch owed the firm. Grayson & Grayson filed a first amended complaint against Couch and his PLLC in August 2007. In their answer, Couch and his PLLC denied that they had practiced with Grayson & Grayson but stated, "The only affiliation is that the defendants held themselves out to the general public as 'Of Counsel.'" As before, Couch and the PLLC raised several affirmative defenses, including accord and satisfaction, set-off, and the statute of frauds. In its first amended counterclaim, the PLLC listed other resolved cases for which Grayson & Grayson allegedly owed it fees. In its answer, Grayson & Grayson admitted that "there were agreements between itself and David A. Couch, PLLC concerning work on cases" and that the PLLC was entitled to one-half of the fees from the Dewey case but denied the other allegations.

Grayson & Grayson failed to serve the PLLC with process. Couch and the PLLC moved for partial summary judgment, alleging that Grayson & Grayson did not perform any work on three of the cases; that Melanie Grayson attended two hearings in the probate proceeding in another case; and alternatively, that Grayson & Grayson was barred by accord and satisfaction from sharing fees in four of the cases. Couch and the PLLC also argued that all agreements were with the PLLC, and not Couch, individually. To support the summary-judgment motion, Couch submitted an affidavit in which he stated that he was the president and an employee of the PLLC and that all business conducted with Grayson & Grayson was done on behalf of the PLLC and not himself, individually. To further support his claim that

the parties had reached an accord and satisfaction, Couch's affidavit also stated the following:

4. On or about December 16, 2005, Mr. Grayson sent the attached email to me indicating that "Up to now we have been able to work it out informally within the cases we worked on together." In addition he stated, "Going forward I don't think we will have as many opportunities to do so because of the changes in the nursing home industry." The email proposed a rent and cost sharing arrangement. At the time I received this email I was on a family vacation in Colorado. When I returned from vacation I countered the proposal. My handwritten notes are on the email which is attached hereto and I also tendered to Grayson & Grayson a check in the amount of $1,250.00 for the monthly rent which was subsequently cashed.

5. Sometime in mid-January Mr. Grayson came to my office and told me that he did not want to be a landlord and I told him I understood and would find another office. After this meeting I found on my desk the check I had given Grayson & Grayson for rent in the amount of $1,250.00 with an attached note dated 1/17/2006 that stated "Just pay for the days in January you are here. Thanks, KG." I took this to mean I should find an office in a hurry which I did. I moved on January 30, 2006 and returned to Grayson & Grayson the check in the amount of $1,250.00 which was deposited and cashed.

In support of its response to Couch's motion for summary judgment, Grayson & Grayson filed affidavits from Melanie and Keith Grayson; a letter from Couch to the Chief Counsel at DHS; the affidavit of Rebecca Hepler, a client; engagement contracts with various clients; and a plead-ing in a probate case that Couch signed on behalf of Grayson & Grayson.

In her affidavit, Melanie Grayson stated:

2. Grayson & Grayson, P.A. had an agreement with Mr. David Couch that he would be "of counsel" with our law firm. We added Mr. David Couch, J.D. as "of counsel" to our letterhead. Our letterhead did not state David Couch, PLLC as being "of counsel." ... Mr. Couch used this firm letterhead to correspond with various persons. . . . In addition, Mr. Couch had his own law firm letterhead separate from Grayson & Grayson, P.A. that he used for cases in which he did not share a fee with Grayson & Grayson, P.A.

3. In exchange for Mr. Couch receiving use of Grayson & Grayson, P.A.'s nursing home system, office space, phone lines, fax machines, computer server, secretaries, postage, and copy machines, we agreed to joint venture certain nursing home cases.

4. Mr. Couch never made any statement to me that Grayson & Grayson, P.A. would only get the fee on these cases if work was personally performed by Keith Grayson or me. I considered each of the cases in dispute in this litigation to be Grayson & Grayson, P.A. cases. Jan Armstrong, Grayson & Grayson, P.A.'s legal assistant, at my instruction, then began filing Probate petitions and obtaining orders to have the contingent contracts approved by the various Probate courts. Mr. Couch signed many of these pleadings and orders under the heading of "Grayson & Grayson, P.A." Again at no time did Mr. Couch ever state to me or, to my knowledge, Keith Grayson, that Grayson & Grayson, P.A.'s fees in these cases were contingent upon personal work product of Keith Grayson or myself.

5. The medical authorization for these cases list Grayson & Grayson, P.A. as the attorney for the Plaintiff. Records requests for these cases were sent out by Jan Armstrong on Grayson & Grayson, P.A. letterhead. Jan Armstrong, my legal assistant, performed extensive work on these and other cases for Mr. Couch. Grayson & Grayson, P.A. did not receive any separate compensation from David Couch for her services. Grayson & Grayson, P.A. paid all of Jan Armstrong's salary and benefits during this time frame without any contribution from Mr. David Couch or David Couch, PLLC.

. . . .

11. My husband forwarded to me a memo and check from Mr. Couch listing costs and the calculation for the fee divisions on the Forest and Hogue cases. I did not check Mr. Couch's math on the fee division. Mr. Couch had access to the correct numbers. I did not consider payment of costs for these two cases in dispute along with other cases a settlement for the fees owed in [the] Hepler, Hawley, Barnett and Wegman cases. In the Hawkins case, Mr. Couch paid our costs on August 5, 2005, but did not pay our portion of the fee until October 5, 2005.

12. Keith and I discussed our continuing relationship with Mr. Couch. I did not want to be in a position of being a landlord or having to monitor Mr. Couch's usage of our staff and facilities to keep our relationship financially fair. We asked Mr. Couch to move in December of 2005.

13. We have learned that settlement checks in the Hepler, Barnett, and Hawley cases were not made payable to Mr. David Couch, PLLC but were rather made payable to the client and to Mr. David Couch personally.

Keith Grayson's affidavit contained similar statements; in addition, Keith averred the following:

10. Eventually, I began to see that Mr. Couch was working on cases with other lawyers and not having Grayson & Grayson, P.A. participate. These cases were not cases that he sent out joint fee agreements on with Grayson & Grayson, P.A. However, Jan Armstrong performed secretarial work for Mr. Couch on these cases without compensation to Grayson & Grayson, P.A. David Couch wanted the use of our facilities and personnel without payment for them.

11. On or about December, 2005, I caused an email to be sent to Mr. Couch asking him how he saw our business relationship going forward. Mr. Couch responded ⌊6in writing that he was willing to pay some money for overhead. In December 2005, I also met with Mr. Couch to discuss the fee division in the Forest case and Hogue cases. I did not agree that we would not receive a fee in the Hepler, Hawley, Barnett and Wegman cases.

12. Mr. Couch later prepared a memo listing the costs on several cases and a fee division for the Forest and Hogue cases. I had no input in these calculations. I assumed that Mr. Couch's math was correct on the Forest and Hogue division. Mr Couch had access to the Hogue file to determine the correct fee division. With this memo Mr. Couch attached a costs check for the cases he listed. It is not unusual when fees are divided to receive a cost check and then the fee check later. I did not consider his giving me a cost check for several cases, some of which were over 8 months old to be a settlement for the fees owed in Hepler, Hawley, Barnett and Wegman. Grayson & Grayson, P.A.

has never received its fees in the cases which are the subject of this lawsuit.

13. After a discussion with my wife, it was decided that we did not want to be landlords and we asked Mr. Couch to move in December 2005. He agreed. I anticipated that he would move early in January; however since he had given us $1250.00 for a month of rent it was apparent that he intended to stay the entire month. I then returned the check with a note that said to pay for the days he would be present, hoping he would get the hint that he needed to move as soon as possible. Mr. Couch remained in our offices until the last day of January at which time he returned the $1250.00 check.

14. The Dewey case was one which we obtained because the estate was one of Melanie Grayson's clients. This matter was initially signed with a joint fee contract between David Couch and Grayson & Grayson, P.A. and subsequently referred to another law firm, Wilkes & McHugh. Mr. Couch sent me an email inquiring as to the settlement. I responded by sending him a letter suggesting that we get together to settle up all of the outstanding fees that he owed Grayson & Grayson, P.A.

15. I have learned that the settlement checks for Hepler, Barnett, and Hawley were not made payable to David Couch, PLLC, but contrary to our written agreements were made payable to the client and to David Couch personally.

16. At no time did I ever agree that Grayson & Grayson, P.A. were not owed a fee on Hepler, Barnett, Hawley and Wegman.

In her affidavit, Rebecca Hepler, the administrator of the estate of her mother, Barbara Hepler, stated that Melanie Grayson had represented her and her father at her mother's guardianship and probate hearings and that, in her capacity as guardian and administrator, she had signed a contract hiring Grayson & Grayson and Couch to pursue litigation against Beverly Enterprises for her mother's injuries. Hepler emphasized that both Grayson & Grayson and Couch were her attorneys.

The PLLC filed a second amended counterclaim against Grayson & Grayson and a third-party complaint against Keith and Melanie Grayson in August 2008. In its third amended counterclaim and first amended third-party complaint, filed in September 2008, the PLLC asserted claims for breach of contract and constructive fraud concerning the fees from the settlement of Dovie Hogue's estate's lawsuit against Beverly Enterprises, stating as follows:

> After the case settled David A. Couch PLLC prepared a memo which was given to Keith Grayson in which there was an error in the calculation of the fees due in that matter. David A. Couch, PLLC was under the assumption that the fee agreement in the case was 40%. The memo was given to Keith Grayson, who knew that the fee agreement was 45%. Mr. Grayson did not point out the error and which resulted in the benefit to him and Grayson and Grayson, P.A. in the amount of $45,000.00.

The PLLC asserted that, as parties to the joint-venture agreement, Keith Grayson and Grayson & Grayson owed it a fiduciary duty to correct this mistake. The PLLC also asserted that it had been damaged by $280,000 concerning the Forrest estate because Keith Grayson had not informed the PLLC that Grayson & Grayson would no longer continue their business relationship when they met to discuss fees in the fall of 2005. Again, Grayson & Grayson and the Graysons admitted that

there were agreements between Grayson & Grayson and Couch about working on cases; the Graysons asserted, however, that the third-party complaint was barred by the statute of limitations, and they raised a counterclaim for breach of contract and unjust enrichment.

In October 2008, Couch and his PLLC supplemented their motion for partial summary judgment, asserting that no genuine issue of material fact existed regarding the fees earned in several of the cases and submitting a supporting affidavit. In response, Grayson & Grayson again stated that it had an agreement with Couch and his PLLC to share fees but disputed a number of facts, including Couch's claim that he was entitled to a fee from the Hogue case.

Melanie and Keith Grayson subsequently moved for summary judgment on the third-party claims against them. In their supporting affidavits, they stated that they had not entered into any agreement in their individual capacities with Couch or his PLLC. Couch and his PLLC then filed a second motion for summary judgment in February 2009, alleging that the PLLC had never been served with a copy of the summons and complaint, and that, under Arkansas Rule of Civil Procedure 4(i) and the statute of limitations, all of the claims against the PLLC should be dismissed.

In March 2009, Couch filed a counterclaim against Grayson & Grayson for breach of contract and constructive fraud. Couch moved for summary judgment, asserting that, at all times, he was acting as an employee and agent of the PLLC, his disclosed principal, and that, as a matter of law, he was not liable for any breach of contract. He also stated that, even if he had contracted individually, he could not be held liable for a breach because he had not resolved any cases individually; that all of the cases were resolved by the PLLC; and that all fees were received by the PLLC, and not himself, individually. In an affidavit offered in support of his summary-judgment motion, Couch stated that he had practiced law as an employee of the PLLC, and never as an individual, since October 8, 2003; that he had received wages and dividends from the PLLC; that the PLLC had maintained bank accounts and filed state and federal income tax returns; that he had moved to Grayson & Grayson's office on October 23, 2003, after the PLLC was incorporated; that he had conducted all business as "David A. Couch, PLLC"; and that his business cards listing the PLLC were kept in the lobby of Grayson & Grayson's office.

On April 9, 2009, the circuit court granted the PLLC's second motion for summary judgment and dismissed the complaint against it as well as its counterclaims and third-party complaints. This order left Grayson & Grayson's claims against Couch, and Couch's counterclaim, pending.

Grayson & Grayson raised the statute of limitations in its answer to Couch's counterclaim and filed a motion to dismiss on this ground and others. In response to Couch's motion for summary judgment, Grayson & Grayson argued that numerous questions of material fact remained to be tried; that the PLLC did not even exist when they agreed that Couch would join the firm "of counsel"; that Couch could not breach his agreement with impunity by hiding behind a corporate facade; that Couch individually entered into their oral agreement; that Couch acted as an agent of Grayson & Grayson in certain matters; that the PLLC was not an agent of Grayson & Grayson; and that the PLLC was Couch's alter ego. Grayson & Grayson supported this response with Melanie Grayson's affidavit, in which she stated that, "[a]t the time this agreement was

reached, David Couch did not have the professional limited liability corporation of David A. Couch, PLLC." Melanie also stated that she "remember[ed] David Couch coming into our office, after we had reached an agreement that he would move in and we would work on his nursing home cases together, telling me he had created David A. Couch, PLLC." The affidavit further stated that Couch routinely signed documents as follows:

Respectfully submitted,

Grayson & Grayson, P.A.
PO Box 9376
North Little Rock, AR 72119
(501) 370–9192

By: <u>David A. Couch, Ark. Bar No. 85033</u>

The affidavit went on to state that David A. Couch, PLLC, was never an agent for Grayson & Grayson, P.A., and that "David A. Couch, PLLC, did not have authority to sign on behalf of Grayson & Grayson, P.A." although "David A. Couch, individually did have the authority to sign on behalf of Grayson & Grayson, P.A. since he was 'Of Counsel.' "

Melanie's affidavit further asserted that Couch used Grayson & Grayson, P.A. letterhead to correspond with various persons. That letterhead listed "David A. Couch" as "of Counsel," not "David A. Couch, PLLC," and, according to Melanie, David Couch never requested that the firm list his PLLC as "of Counsel" on its letterhead. Regarding the client representation agreements that were executed by Couch on behalf of Grayson & Grayson, Melanie noted that contracts signed by each client at issue in the lawsuit provided as follows:

"Attorneys at Grayson & Grayson, P.A. are engaged in the practice of law in Arkansas; and you and/or your family (called "you", which includes the plural where necessary) wish to employ DAVID A. COUCH and GRAYSON & GRAYSON, P.A. as your law firm to file your nursing home negligence claim through suit or otherwise."

The client contracts were then executed as follows:

Grayson & Grayson, P.A.

By: <u>Keith Grayson</u>

By: <u>David A. Couch</u>

Melanie further asserted that Couch used his own contract for those cases that were joint-ventured with David A. Couch, PLLC, and she noted that the settlement checks for the Hepler, Barnett, and Hawley cases were not made payable to "David Couch, PLLC," but were rather made payable to the client and to David Couch personally.

In December 2009, Grayson & Grayson moved for partial summary judgment on Couch's constructive-fraud claim, arguing that the claim was barred by the statute of limitations, because it was based on Couch's assertion that Keith Grayson had a duty to correct an error that Couch had made in the December 14, 2005 memorandum. Noting that Couch had moved out of its office on January 30, 2006, Grayson & Grayson argued that Couch had alleged no act of fraudulent concealment that would toll the three-year statute of limitations.

The same day, Couch filed a renewed motion for summary judgment based on an IRS Form 1099 that Grayson & Grayson issued the PLLC in January 2005. In response, Grayson & Grayson produced the affidavit of Melanie Grayson, who explained that, in dividing the attorney's fees received in a lawsuit, she had asked Couch to submit an IRS Form W–9 indicating how he wanted his portion of that fee to be handled for tax purposes; that Couch had directed her to pay his portion of the fee to the PLLC; and that how the check or the Form 1099 were written did not indicate

who the parties to their agreement were. She reiterated: "Our underlying agreement ... was with David Couch, individually."

In July 2010, Grayson & Grayson filed yet another motion for summary judgment on all of Couch's claims on the basis of the statute of limitations. On October 22, 2010, the circuit court granted Grayson & Grayson's motion for partial summary judgment on the statute of limitations and also granted Couch's renewed motion for summary judgment. Grayson & Grayson filed a motion for reconsideration, on which the court did not rule. Grayson & Grayson filed a timely notice of appeal, and Couch filed a notice of cross-appeal.

## II. *Standard of Review*

Summary judgment may be granted by a trial court only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, clearly show that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Lee v. Martindale*, 103 Ark.App. 36, 286 S.W.3d 169 (2008). When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact. *Dodson v. Allstate Ins. Co.*, 365 Ark. 458, 231 S.W.3d 711 (2006). On appeal, we need only decide if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* In making this decision, we view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary ⌊13⌋judgment should be denied if reasonable minds might reach different conclusions from the undisputed facts. *Worley v. City of Jonesboro*, 2011 Ark. App. 594, 385 S.W.3d 908.

## III. *The Direct Appeal*

■ Although the trial court did not expressly state the basis for its grant of summary judgment, the primary argument advanced below by Couch was that he could not be held liable to Grayson & Grayson because he was an agent of David A. Couch, PLLC, during his association with Grayson & Grayson, and Grayson & Grayson had notice of this agency relationship. Grayson & Grayson asserts that summary judgment was improper because whether Couch was acting as an agent for David A. Couch, PLLC, was an issue of fact.[1] It is true that an agent cannot be held personally liable to a third person on a contract for a disclosed principal. *Ferguson v. Huddleston*, 208 Ark. 353, 186 S.W.2d 152 (1945). If the facts are in dispute, agency is a question of fact to be determined by the finder of fact. *Sterne, Agee & Leach, Inc. v. Way*, 101 Ark.App. 23, 270 S.W.3d 369 (2007).

■ Grayson & Grayson also contends that it did not enter into an "of-counsel" agreement with David A. Couch, PLLC, but with Couch individually. Questions of fact relating to the formation of contracts are for the trier of fact to determine, *Ingersoll–Rand Co. v. El Dorado Chem. Co.*, 373 Ark. 226, 283 S.W.3d 191 (2008), and conclusions concerning the true

---

1. The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control and that the other consents to so act. *Sterne, Agee & Leach, Inc. v. Way,* 101 Ark.App. 23, 270 S.W.3d 369 (2007). The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. *Id.*

intent of the parties to the agreement primarily involve issues of fact. *Cobren v. Anderson,* 2011 Ark. App. 477, 385 S.W.3d 319. When there are genuine questions of material fact with regard to a party's intent, summary judgment is improper. *Worley, supra.*

■ In the present case, there were numerous questions of material fact as to whether Couch was acting as an agent for David L. Couch, PLLC, and whether Grayson & Grayson entered into a contract with Couch individually or with David A. Couch, PLLC. Indeed, in Couch's "Statement of Undisputed Facts" in support of his motion for summary judgment, Couch as much as concedes that fact: "Grayson [& Grayson] claims that the arrangement was with David Couch individually. Couch claims that the arrangement was with the PLLC. *The terms of this arrangement are unclear and disputed.*" (Emphasis added.) Where the terms of the agreement and the identities of the parties thereto are the crux of the complaint, it is inconceivable that the circuit court granted summary judgment in the face of this statement *by the party moving for summary judgment. See, e.g., IC Corp. v. Hoover Treated Wood Prods., Inc.,* 2011 Ark. App. 589, 385 S.W.3d 880 (we view the evidence in the light most favorable to the party against whom the motion was filed, *resolving all doubts and inferences against the moving party)* (emphasis added).

Other material questions of fact were presented below, rendering summary judgment inappropriate. For example, Grayson & Grayson contends that it offered the of-counsel position to Couch individually, not to David A. Couch, PLLC,

and that it did so before Couch created the PLLC; Couch, on the other hand, maintained that all business conducted with Grayson & Grayson was "conducted on behalf of the corporate entity David A. Couch PLLC and not David Couch individually" and that the of-counsel agreement was between Grayson & Grayson and David A. Couch, PLLC. Further, despite Couch's claims that he was always acting on behalf of his corporate entity, Grayson & Grayson points out that Couch's name on the Grayson & Grayson letterhead was simply "David A. Couch," not "David A. Couch, PLLC," and that Couch signed both employment contracts with clients and various court pleadings in his individual—not corporate—capacity.[2] These issues present genuine issues of material fact.

■ A material fact is one that is "significant or essential to the issue or matter at hand." *Black's Law Dictionary* 670 (9th ed.2009). The major issues in this litigation were the identities of the parties to the of-counsel agreement and whether Couch could be held individually liable to Grayson & Grayson, or whether he was insulated from individual liability by the fact that he was working as an agent for his corporation. As is evident from the facts discussed above, presented by Grayson & Grayson in its responses to Couch's motions for summary judgment, there were clearly numerous genuine issues of material fact that rendered summary judgment inappropriate.

■ Couch argues that, in the event this court agrees with Grayson & Grayson on the disclosed-agent issue, the summary judgment can nonetheless be affirmed for

---

2. Couch asserts that Grayson & Grayson admitted in its earlier pleadings, such as its answer to Couch's counterclaim, that Couch acted as an agent for the PLLC and that it is bound by those admissions. It was unnecessary for Grayson & Grayson to make a distinction between Couch and David A. Couch, PLLC, however, until the PLLC was dismissed from the lawsuit for failure of service of process.

a different reason, namely, that the parties entered into an accord and satisfaction of all claims against each other when he and Keith Grayson met to "wrap up" business in fall 2005. An accord and satisfaction generally involves a settlement in which one party agrees to pay and the other to receive a different consideration or a sum less than the amount to which the latter is or considers himself entitled; before there can be an accord and satisfaction, there must be a disputed amount involved and a consent to accept less than the amount in settlement of the whole. *Dyke Indus., Inc. v. Waldrop*, 16 Ark.App. 125, 697 S.W.2d 936 (1985); *see also Glover v. Woodhaven Homes, Inc.*, 346 Ark. 397, 57 S.W.3d 211 (2001); *Holland v. Farmers & Merchants Bank*, 18 Ark.App. 119, 711 S.W.2d 481 (1986). When the testimony is in conflict on the issue of whether the parties agreed and what the terms of the agreement were, however, a question arises that is to be determined by the trier of fact. *Country Corner Food & Drug, Inc. v. Reiss*, 22 Ark.App. 222, 737 S.W.2d 672 (1987); *Holland, supra*. Keith Grayson stated that he did not intend to settle all of the parties' outstanding fee issues when they met in fall 2005. Thus, Grayson & Grayson presented sufficient evidence to avoid summary judgment on this basis.

Finally, Couch devotes over six pages of his brief to his argument that this court could also affirm on the ground that the terms of the parties' agreement were uncertain. We disagree; in fact, as explained above, this uncertainty demonstrates that there were questions of fact to be tried. *See Reiss, supra; Holland, supra.*

## IV. *The Cross–Appeal*

Couch argues on cross-appeal that, if this court reverses the summary judgment against Grayson & Grayson,[3] the circuit court erred in granting Grayson & Grayson's partial motion for summary judgment on statute-of-limitations grounds and dismissing Couch's counterclaim. Actions founded upon an oral contract must be commenced within three years after the cause of action accrues. Ark.Code Ann. § 16–56–105(1) (Repl.2005). The limitations period in actions on contract begins to run when there is a complete and present cause of action, and, in the absence of concealment of the wrong, when the injury occurs, not when it is discovered. *Parkerson v. Lincoln*, 347 Ark. 29, 61 S.W.3d 146 (2001); *Helms v. Univ. of Missouri–Kansas City*, 65 Ark.App. 155, 986 S.W.2d 419 (1999).

Couch argues that the statute did not begin to run because Keith Grayson failed to tell Couch that Couch had erroneously calculated the fee percentage that Grayson & Grayson received in the Hogue matter on a 40% contingent fee rather than the 45% contingent fee that Grayson & Grayson's contract with its client provided. Silence can be the basis of a constructive fraud; generally, however, liability for a nondisclosure may be found only in special circumstances. *Downum v. Downum*, 101

---

**3.** Grayson & Grayson contends that Couch's notice of cross-appeal was untimely. We disagree. Grayson & Grayson filed its notice of appeal on December 1, 2010. Couch filed his notice of cross-appeal on December 27, 2010. Arkansas Rule of Appellate Procedure–Civil 4(a) (2011) provides that a notice of cross-appeal shall be filed within ten days after receipt of the notice of appeal, but in no event shall a cross-appellant have less than thirty days from the entry of judgment. Grayson & Grayson's motion for reconsideration under Arkansas Rule of Civil Procedure 60 was filed on October 28, 2010, and was deemed denied on November 29, 2010 (a Monday). Ark. R.App. P.-Civ. 4(b)(2) (2011). Couch thus had until December 29, 2010, to file his notice of cross-appeal, which was timely.

Ark.App. 243, 274 S.W.3d 349 (2008). Couch, therefore, had to demonstrate that Grayson & Grayson concealed a material fact known to it and that it had a duty to communicate that fact to Couch. *See id.* Couch asserts that, as a co-venturer on the Hogue case, Grayson & Grayson owed him a fiduciary duty, *Johnson v. Lion Oil Co.,* 216 Ark. 736, 227 S.W.2d 162 (1950); therefore, Keith Grayson's failure to speak amounted to constructive fraud, which tolled the statute of limitations.

Ordinarily, the question of fraudulent concealment is one of fact and unsuited for summary judgment, *Bomar v. Moser,* 369 Ark. 123, 251 S.W.3d 234 (2007), and the running of the statute of limitations is largely a question of fact. *Nw. Ark. Recovery, Inc. v. Davis,* 89 Ark. App. 62, 200 S.W.3d 481 (2004). Here, however, Grayson & Grayson presented evidence that it was not aware of the erroneous fee percentage until after this litigation began, and Couch failed to meet that proof with proof, rendering summary judgment proper. *See Dye v. Anderson Tully Co.,* 2011 Ark. App. 503, 385 S.W.3d 342 (affirming summary judgment where party opposing the motion failed to meet proof with proof).

Reversed and remanded on direct appeal; affirmed on cross-appeal.

HART and GLOVER, JJ., agree.