2012 Ark. App. 295

**John P. HAUSER and Ada Hauser, Appellants**

v.

**Derwin SIMS, Sr., and David L. Webber, Appellees.**

**No. CA 11–960.**

Court of Appeals of Arkansas.

April 25, 2012.

Charles T. Coleman, Gary D. Marts, Jr., Johnathan D. Horton, Wright, Lindsey & Jennings LLP, for appellants.

Sheila F. Campbell, P.A., North Little Rock, for appellees.

DOUG MARTIN, Judge.

Appellees Derwin Sims, Sr., and David L. Webber are assignees of two judgments previously owned by Forrest City Bank (FCB). In 2009, appellees sued appellants John and Ada Hauser, the judgment debtors, for the balances owed. The circuit court granted summary judgment to appellees and awarded them a total of $753,108.21. The Hausers appeal and argue that 1) the circuit court lacked personal jurisdiction over them; 2) they did not have the opportunity to complete discovery prior to the entry of summary judgment; 3) genuine issues of material fact remain as to the amount of the judgments and the amount of postjudgment interest; and 4) the summary-judgment order should be modified to conform to Arkansas law. We affirm the circuit court's exercise of personal jurisdiction over the Hausers but reverse and remand in all other respects.

## I. *Factual History*

The Hausers were co-makers or guarantors on six loans obtained by their company, Commercial Group South, from

FCB. The loans were evidenced by six notes totaling approximately $750,000 and were secured by real property and other collateral.

The loans were soon in default, and FCB sued the Hausers, Commercial Group South, and other entities in Lee County Circuit Court for amounts due. No answer was filed by the Hausers or Commercial Group South, which caused the court to enter two default judgments. The first, dated May 7, 2003, awarded FCB $739,052.51, plus interest and attorney fees, against John Hauser and Commercial Group South, jointly and severally, on all six loans. The second, dated July 16, 2003, added Ada Hauser as a judgment debtor on the two largest loans for a total of $537,839.01, plus interest and attorney fees.

Following entry of the judgments, FCB purchased several tracts of the collateral property at execution sales, for which the Hausers received credit against their judgment debt. Near this time, appellees, who were business associates of John Hauser, petitioned the circuit court to set aside Hauser's default judgment and filed a counterclaim against FCB. The dispute between appellees and FCB was eventually settled, and as part of the settlement agreement, FCB assigned its rights in the two Hauser judgments to appellees on September 6 and October 29, 2007.

In December 2007, appellees sued the Hausers in their new state of residence, Arizona, in an attempt to collect on the Arkansas judgments. The Arizona federal district court ruled that appellees' suit was barred by a four-year statute of limitations on the enforcement of foreign judgments. Appellees appealed to the United States Court of Appeals for the Ninth Circuit, which affirmed the district court's ruling in a memorandum opinion.

While awaiting the Ninth Circuit's decision, appellees filed a pleading against the Hausers in Lee County Circuit Court on March 23, 2009, titled "Complaint For Action On Judgment." Appellees claimed that the Hausers still owed $671,115.85 on the 2003 judgments, and they sought a new judgment for that amount.[1] They later explained that they wanted a new judgment in order to obtain judgment in their own names and to clarify the amounts due under the original judgments.[2] The Hausers moved to dismiss appellees' complaint for lack of personal jurisdiction, asserting that they had lived in Arizona since 2004 and lacked sufficient minimum contacts with the state of Arkansas. The circuit court denied the motion to dismiss.

On March 19, 2010, appellees filed a motion for summary judgment, claiming that the Hausers owed $753,108.21 on the judgments as a matter of law (taking into account the continued accumulation of interest). The Hausers again responded that the circuit court lacked personal jurisdiction over them. They also argued that genuine issues of material fact remained as to the amounts due, both on the judgments and as postjudgment interest. In support of their response, they attached several documents purporting to show discrepancies in the judgment balances, especially in the calculation of credits following

---

1. A judgment creditor may file a common-law civil "action on the judgment," which is a new and independent action, resulting in the entry of a new judgment. *McGill v. Robbins,* 231 Ark. 411, 329 S.W.2d 540 (1959); *Agribank, FCB v. Holland,* 71 Ark.App. 159, 27 S.W.3d 462 (2000).

2. Undoubtedly, appellees would also stand to gain if, by procuring a "new judgment" in Arkansas, the Arizona limitations period would begin to run anew. We leave the resolution of that issue to the Arizona courts.

the sale of collateral. An affidavit from John Hauser stated that certain items pledged as collateral had not been accounted for in the credits shown by appellees.

The Hausers also moved for additional discovery time pursuant to Rule 56(f) of the Arkansas Rule of Civil Procedure.[3] They argued that the court had not yet ruled on their subpoena duces tecum directed to FCB, which sought production of the settlement agreement with appellees and other documents related to the loans and the credits from sales of collateral. FCB had moved to quash the subpoena on the grounds that the settlement agreement was confidential; that much of the information sought had already been provided to the Hausers in the Arizona litigation; and that the requests in the subpoena were "unreasonable and oppressive."

Following a hearing on all motions, the circuit court ruled that no issues of fact remained and that appellees were entitled to judgment as a matter of law. The court also granted FCB's motion to quash the subpoena duces tecum but nevertheless directed the parties to arrange for the Hausers' counsel to inspect FCB's documents. The record does not indicate whether this inspection actually occurred. On July 29, 2011, the circuit court entered a second order that again granted summary judgment to appellees. The court ruled that it was entering new judgments against the Hausers for a total of $753,108.21, the precise amount sought in appellees' motion for summary judgment. The Hausers filed timely notices of appeal from both of the summary-judgment orders.

## II. *Personal Jurisdiction*

■ The Hausers argue first that the circuit court lacked personal jurisdiction over them in this action seeking a new judgment. According to the Hausers, they moved from Arkansas in 2003, lived for a short time in Delaware, then moved to Arizona in March 2004. There, they registered to vote and obtained driver's licenses. They continued to own at least one piece of property in Arkansas, which appellees executed upon in 2008; but, other than that, they conducted no business in Arkansas and had no further contacts with the state.

■ Arkansas's long-arm statute provides that the courts of this state shall have jurisdiction of all persons to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Ark.Code Ann. § 16–4–101(B) (Repl.2010). Due-process jurisprudence holds that jurisdiction over a person may be exercised if the person has sufficient minimum contacts with the forum state and if the exercise of jurisdiction does not offend the traditional notions of fair play and substantial justice. *John Norrell Arms, Inc. v. Higgins*, 332 Ark. 24, 962 S.W.2d 801 (1998); *Twin Springs Grp., Inc. v. Karibuni, Ltd.*, 2009 Ark. App. 649, 344 S.W.3d 100. The following five factors may be considered in determining the sufficiency of a defendant's contacts with the forum state: 1) the nature and quality of the contacts, 2) the quantity of the contacts, 3) the relation of the cause of action to the contacts, 4) the interest of the forum state in providing a forum for its residents, and 5) convenience of the parties. *John Norrell Arms, supra.* The defendant's contacts with the forum state must also be sufficient to cause him to reasonably anticipate being haled into court there. *Yanmar Co., Ltd.*

---

**3.** The Hausers conformed to the procedural requirements of Ark. R. Civ. P. 56(f) (2011) by providing an affidavit and an argument explaining the need for more time to conduct discovery.

v. *Slater*, 2012 Ark. 36, 386 S.W.3d 439. This "fair warning" requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum state, and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). It ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Yanmar, supra.*

Our review of the Hausers' contacts with the state of Arkansas reveals that they are strong, both in quantity and quality. The Hausers entered into or guaranteed several loan contracts with an Arkansas bank and pledged Arkansas real estate as collateral. They defaulted on the loans, and an Arkansas court entered judgments against them. The judgment creditor then executed on collateral located within the state. Under Arkansas law, even a single contract can provide a basis for the exercise of jurisdiction over a nonresident defendant if there is a substantial connection between the contract and the forum state. *Twin Springs, supra.* It follows that the Hausers' substantial financial and legal connections with the state of Arkansas in this case meet the requirements for minimum contacts.

Further, the Hausers should not have been surprised to be haled into court in Arkansas, given that the judgments against them remain unsatisfied. *See generally Williams Mach. & Fabrication, Inc. v. McKnight Plywood, Inc.*, 64 Ark.App. 287, 983 S.W.2d 453 (1998). Where a defendant has deliberately engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum, he has manifestly availed himself of the privilege of conducting business there. *Burger King, su-*

*pra.* Under such circumstances, the assertion of personal jurisdiction is to be expected.

There is also nothing in the exercise of personal jurisdiction over the Hausers that offends traditional notions of fair play and substantial justice. The Hausers owned property, obtained loans, conducted business, and had judgments entered against them in the state of Arkansas, all in connection with the present cause of action.

The Hausers argue that, because appellees' present cause of action was a new and independent claim seeking a new judgment, we should not look to the connections they had with Arkansas in 2003 when the original judgments were entered but to the connections they had with Arkansas in 2009 when the present suit was filed. By that point, they claim, they had been absent from the state for several years and had conducted no activity here. While appellees' cause of action is indeed a new and independent one, we cannot logically divorce it from the 2003 judgments, as the Hausers suggest. Appellees' complaint arises out of and is directly related to the 2003 judgments, which were entered in Arkansas and remain unsatisfied. *See Cadle Co. II, Inc. v. Fiscus*, 163 Cal.App.4th 1232, 78 Cal.Rptr.3d 238 (2008). We therefore affirm the circuit court's exercise of personal jurisdiction over the Hausers.

### III. *Summary Judgment*

The Hausers argue next that summary judgment was improper because fact questions remain as to the amounts they owe on the 2003 judgments, and as to postjudgment interest. They also contend that they needed more time to complete discovery.

Summary judgment may be granted by a trial court only when the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any, clearly show that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Grayson & Grayson, P.A. v. Couch,* 2012 Ark. App. 20, 388 S.W.3d 96. When the movant makes a showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact. *Id.* On appeal, we need only decide if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* In making this decision, we view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

The primary factual issue to be resolved by the circuit court was the balance due on the 2003 judgments. Appellees' motion for summary judgment contained a table that set forth the original amounts due on the judgments, the interest that accrued through early 2010, and the attorney-fee awards, less credits of approximately $500,000 from execution sales. According to the table, the Hausers still owed $753,108.21 after the credits were applied. The Hausers responded that appellees' dollar figures were subject to dispute, as shown by differing amounts pled in appellees' Arizona complaint and in a spreadsheet prepared by FCB and forwarded to the Hausers during the Arizona litigation. On appeal, the Hausers argue that these conflicting numbers create a fact question that renders summary judgment inappropriate.

Our initial impression is that the Hausers may benefit from the conflicting dollar amounts as far as the credits due them, given that appellees' figures appear to be greater on that score. We also acknowledge that FCB president Dwight Rutland stated in his affidavit that the figures in FCB's spreadsheet were not intended as a reflection of the actual credits applied to the Hauser judgments. Nevertheless, the significant variation in the subject documents points up a larger problem in this case, which is that the record is simply too undeveloped and beset with uncertainty to permit summary judgment.

In addition to the deviations in proof mentioned above, the record reveals conflicts as to whether payments were made on at least one of the notes after the 2003 judgments were entered and whether all of the collateral was accounted for. On the latter, a court document in the record lists prefabricated modular homes as collateral for one of the loans. While Dwight Rutland stated in his affidavit that no such property was received by FCB in satisfaction of the loans, John Hauser's affidavit states that the modular homes and certain other items were pledged as collateral and that he had received no accounting of what happened to them. Other evidence demonstrates that FCB sold some of the collateral that it had purchased to third persons, although it is not possible to ascertain with any degree of assurance whether these sales yielded additional amounts for which the Hausers should have been credited.

These matters (which are not the sole instances of conflict and confusion in the record) point up the need for not only findings of fact but for additional discovery as requested by the Hausers in order to ascertain the true balance due on the judgments. Where summary judgment is premature due to the fact that a party has not had the opportunity to complete discovery, reversal is in order. *Pledger v. Carrick,* 362 Ark. 182, 208 S.W.3d 100 (2005). We are convinced that giving the Hausers an opportunity to pursue discovery of FCB's records (as the trial court in

fact ordered in its first judgment) could potentially allow them to develop proof of additional credits and payments not considered by appellees. *Pledger, supra.*

Accordingly, we conclude that summary judgment was premature on the issue of the balance owed on the Hauser judgments, and we reverse and remand for further proceedings. *See NCCF Support, Inc. v. Harris McHaney Real Estate Co.,* 2010 Ark. App. 384, 376 S.W.3d 459; *Deltic Timber Corp. v. Newland,* 2010 Ark. App. 276, 374 S.W.3d 261.

Summary judgment was likewise improper on the amount of postjudgment interest awarded to appellees, which is included in the $753,108.21 judgment amount. The Hausers claim that the postjudgment interest is inflated, and we agree that this matter should be revisited on remand.

Appellees' table, on which the court's $753,108.21 judgment is based, appears to calculate postjudgment interest on the full, original amounts of the 2003 judgments accruing over 2,553 days, which is nearly seven years. Thus, these computations may not have taken into account that the original judgment amounts were reduced at several points following 2003 by virtue of credits for property sales. The information provided to the court through additional discovery and other factual development on remand should assist in determining the precise timing and amount of the credits.[4]

## IV. *Request for Modification of the Judgment*

The Hausers also seek modification of the language in the court's judgment. Because our disposition of this case involves a remand, it is likely that the judgment now in place will no longer be operative. Yet, the court may well enter some type of judgment following the proceedings on remand. We therefore address the Hausers' arguments since any error in the content of the judgment could reoccur.

■ The Hausers first challenge language in the judgment requiring them to prepare a schedule of assets. Arkansas Code Annotated section 16–66–221(a) (Repl.2005) provides that, whenever any resident of this state has a final judgment entered against him, he shall prepare a schedule, verified by affidavit, of all of his property. The Hausers claim that, because they are not residents of this state, the statute does not apply to them. We agree.

■ We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *May Constr. Co., Inc. v. Town Creek Constr. & Dev., Inc.,* 2011 Ark. 281, 383 S.W.3d 389. When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.* The plain language of the statute in this case is that the schedule-of-assets requirement applies to judgments entered against Arkansas residents. At the time the judgment was entered in this case, the Hausers had not been residents of Arkansas for more than seven years. The statute, therefore, does not apply to them.

Appellees cite subsection (c) of the statute, which provides that "[a]ll final judgment orders of a court of record of this state shall include a provision requiring

---

4. Appellees argue that an accountant, Ebony Mills, provided a document that properly calculated postjudgment interest beginning in 2008, after all credits had been assessed. But Mills's starting point was the $671,115.85 in appellees' complaint, which likewise appears to include all of the prior years' accumulated interest.

the judgment debtor to comply with the requirements of this section." They contend that subsection (c) overrides the residency requirement in subsection (a). We decline to adopt appellees' interpretation, as it would render subsection (a) meaningless. *See Subteach USA v. Williams*, 2010 Ark. 400, 373 S.W.3d 884. The logical construction of the statute as a whole is that subsection (c) merely requires the trial court to include the asset-schedule provision in its order, if a resident defendant is required to prepare such a schedule in accordance with subsection (a).

The Hausers also ask that we require the circuit court to "refer" to the 2003 judgments so that they will be protected from having to satisfy their judgment debt more than once. The 2003 judgments formed the basis for appellees' cause of action. Therefore, we believe the better practice would be to identify them in any new judgment entered by the court.

Affirmed in part; reversed and remanded in part.

ROBBINS and HOOFMAN, JJ., agree.